1  BLOOD HURST & O'REARDON, LLP
2  TIMOTHY G. BLOOD (149343)
   THOMAS J. O'REARDON II (247952)
   PAULA M. ROACH (254142)
3  701 B Street, Suite 1700
   San Diego, CA 92101
4  Telephone: 619/338-1100
   619/338-1101 (fax)
5  tblood@bholaw.com
   toreardon@bholaw.com
6  proach@bholaw.com

7  BARNOW AND ASSOCIATES, PC
   BEN BARNOW
8  One N. LaSalle Street, Suite 4600
   Chicago, IL 60602
9  Tel: 312/621-2000
   312/641-5504 (fax)
10 b.barnow@barnowlaw.com

11 THE COFFMAN LAW FIRM
   RICHARD L. COFFMAN
12 First City Building
   505 Orleans Street, Suite 505
13 Beaumont, TX 77701
   Tel: 409/833-7700
14 866/835-8250 (fax
   rcoffman@coffmanlawfirm.com
15
   Attorneys for Plaintiff
16

**Filed**

APR 2 2 2013

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

E-filing

Fee paid
SI

(99)

17          UNITED STATES DISTRICT COURT

18     NORTHERN DISTRICT OF CALIFORNIA - SAN JOSE DIVISION

19 KATHLEEN HASKINS, on behalf of     Case No.: CV13-01834 HRL
   herself and all others similarly situated,
20                                      CLASS ACTION COMPLAINT
              Plaintiff,
21                                      CLASS ACTION
         v.
22                                      JURY TRIAL DEMANDED
   SYMANTEC CORPORATION,
23
              Defendant.
24

25

26

27

28

00057619                    CLASS ACTION COMPLAINT

BY FAX

Plaintiff Kathleen Haskins ("Plaintiff"), on behalf of herself and all others similarly situated, complains of the actions of Defendant Symantec Corporation ("Symantec"), and respectfully shows the following:

## NATURE OF THE CASE

1.  This is a national class action (or, alternatively, a multistate class action) brought by Plaintiff, individually and on behalf of all similarly situated persons and entities (*i.e.*, the Class Members) who, for use and not resale, purchased, leased and/or licensed pcAnywhere, Norton SystemWorks (Norton Utilities and Norton GoBack), Norton Antivirus Corporate Edition and Norton Internet Security software that contain all or a portion of the 2006 version of the source codes for such products. The purposes of these computer software products, which are manufactured, marketed and sold by Symantec, are, *inter alia*, to "secure and manage ... information against more risks at more points, more completely and efficiently than any other company" and "eliminate risks to information, technology and processes independent of the device, platform, interaction or location."

2.  On January 17, 2012, Symantec revealed publicly, for the first time, that during 2006, hackers infiltrated its network and stole the source code for the 2006 versions of pcAnywhere, Norton SystemWorks (Norton Utilities and Norton GoBack), Norton Antivirus Corporate Edition and Norton Internet Security (collectively referred to as the "Compromised Symantec Products"). Although Symantec suspected in 2006 its network had been breached and its source code stolen, Symantec did not disclose the breach or the source code theft to its customers, or take any proactive measures to protect the security and functionality of the software it marketed and sold to Plaintiff and Class Members, until hackers revealed the breach in early 2012. Rather, Symantec continued marketing, advertising, selling, leasing and/or licensing the Compromised Symantec Products to Plaintiff and Class Members as if nothing had happened, leading them to believe the Compromised Symantec Products were secure and completely functional as advertised.

3.  As a direct and/or proximate result of the Symantec system breach and the theft and compromise of the source code, Plaintiff and Class Members—Symantec's customers who

BLOOD HURST & O'REARDON, LLP

1  purchased, leased and/or licensed the Compromised Symantec Products—were deprived of the

2  benefit of their bargain; to wit, although Plaintiff and Class Members paid for uncompromised

3  versions of the Compromised Symantec Products, they, in fact, received compromised

4  versions of such products. Plaintiff and Class Members did not receive the Symantec

5  computer system and data security software as represented to them and for which they had

6  paid more than the software was worth. As a result, Plaintiff and Class Members unknowingly

7  placed their computers at risk for intrusion by hackers and unknowingly placed their

8  personally identifiable information at risk for theft and misuse.

9      4.    Symantec's wrongful actions and/or inaction constitute (i) violations of the

10  California Consumer Legal Remedies Act, California Civil Code §1750, *et seq.*, (ii) unlawful

11  business acts and practices in violation of Section 17200 of the California Business and

12  Professions Code, (iii) breach of contract, and (iv) breach of warranty. Symantec's wrongful

13  actions and/or inaction also implicate the equitable doctrine of money had and received.

14      5.    Plaintiff, on behalf of herself and the Class Members, seeks actual damages,

15  punitive damages, equitable relief, injunctive relief, restitution and/or disgorgement, attorneys'

16  fees, litigation expenses and costs of suit.

17  **JURISDICTION AND VENUE**

18      6.    This Court has subject matter jurisdiction over Plaintiff's claims under 28

19  U.S.C. §1332(d) (CAFA) because (i) there are 100 or more Class Members, (ii) at least one

20  Class Member is a citizen of a state diverse from Symantec's citizenship, and (iii) the matter in

21  controversy exceeds $5,000,000 USD exclusive of interest and costs. This Court has personal

22  jurisdiction over Symantec because at all times, Symantec's corporate headquarters were (and

23  continue to be) in the Northern District of California and Symantec conducted (and continues

24  to conduct) business in the Northern District of California.

25      7.    Venue is proper in the Northern District of California, under 28 U.S.C.

26  §1391(b) and (c) because a substantial part, if not all, of the events giving rise to this action

27  occurred in the Northern District of California and Symantec resides, is located, can be found

28  and/or conducts business in the San Jose Division of the Northern District of California.

BLOOD HURST & O'REARDON, LLP

2<br>CLASS ACTION COMPLAINT

**PARTIES**

8.      Plaintiff Kathy Haskins is a resident of Beaumont, Texas. During late 2007 or early 2008, Plaintiff purchased one or more of the Compromised Symantec Products online directly from Symantec. Plaintiff renewed the Compromised Symantec Product(s) annually because the product(s) allegedly were trusted antivirus and computer protection products. The Compromised Symantec Products Plaintiff purchased contained all or a portion of the compromised 2006 source code. Plaintiff purchased the Compromised Symantec Product(s) for the reasons advertised, unaware that it was compromised and believing it would protect her computer from viruses and malware in the manner, and quality of product and service, represented. As such, Plaintiff was deprived of the benefit of her bargain; to wit, although Plaintiff paid for an uncompromised version of the Compromised Symantec Product(s), she received a compromised version of the Compromised Symantec Product(s). Plaintiff did not receive the fully functional Symantec data and system security software for which she paid. Plaintiff unknowingly placed her computer at risk for intrusion by hackers and unknowingly placed her personally identifiable information at risk for theft and misuse. As a result of her purchase of a product that was falsely advertised, Plaintiff lost money on the purchase of the Compromised Symantec Product(s) as a result of Symantec's unfair business practices in the amount of the price she paid.

9.      Defendant Symantec is a Delaware corporation with its principal place of business and corporate world headquarters at 350 Ellis Street, Mountain View, CA 94043. According to its website, www.symantec.com, Symantec is "a global leader in providing security, storage and systems management solutions" to consumers, small businesses and large global organizations to "secure and manage their information against more risks at more points, more completely and efficiently than any other company" through its antivirus, data management utility and enterprise software products. Symantec's product "focus is to eliminate risks to information, technology and processes independent of the device, platform, interaction or location." Symantec is publicly traded on the NASDAQ (symbol: SYMC). Symantec, which is number 391 on the Fortune 500 list, has over 20,500 employees worldwide

BLOOD HURST & O'REARDON, LLP

00057619

and generated 2012 fiscal year revenue of $6.7 billion. Symantec may be served with Summons and a copy of this Class Action Complaint and Jury Demand by serving its registered agent, CSC-Lawyers Incorporating Service, 2730 Gateway Oaks Dr., Suite 100, Sacramento, CA 95833.

**BACKGROUND FACTS**

10.     In early January 2012, an India-based computer hacking group known as the Lords of Dharmaraja claimed they possessed source code for several of Symantec's software products and threatened to publicly disclose the code on the Internet.

11.     Source code is software code written by programmers in a high-level language—such as Java, C/C++ or Perl—readable by people, but not by computers. Source code, often referred to as the "source" of a software program, contains variable declarations, instructions, functions, loops and other statements that tell the software program how to function. Source code must be converted to object code or machine language by a compiler before a computer can read or execute a software program.

12.     Programmers typically add comments to source code explaining sections of the code. These comments help other programmers gain at least some understanding of what the source code does without requiring hours to decipher it. The stolen Symantec source code, the blueprint to the Compromised Symantec Products, includes instructions written in various computer programming languages, and comments made by engineers to explain the design of the software. For example, a file from the stolen source code of the 2006 version of Norton Utilities that the hackers published on the Internet includes an engineer's comment to "[m]ake all changes in local entry, so we don't screw up the real entry if we back up early."

13.     Software development companies, such as Symantec, closely guard their source code because it is considered the "crown jewels" of their software. Source code is their most precious asset. At some companies, access to source code is granted only on an as-needed basis; programmers may view the source code only if it is related to their specific assigned tasks.

BLOOD HURST & O'REARDON, LLP

00057619

14.   The reason for the secrecy is that software development companies fear rivals could use their source code to reverse engineer the "secret sauce" behind their technology. More importantly, with the source code in hand, hackers can readily access computer systems without authorization, install malware and viruses, generally incapacitate the systems and/or leave them vulnerable to data breaches, identity theft and/or identity fraud.

15.   On January 4, 2012, the Lords of Dharmaraja posted on Pastebin.com what they claimed was confidential documentation pertaining to Norton Antivirus source code. The published information was a description of an application programming interface (API) for Symantec's AV product.

16.   The hackers also posted what they claimed was the complete source code tree file for Norton Antivirus—although it was later taken down.

17.   YamaTough, the *nom de plume* of the hacker who posted the documents, published at least two more documents on Google+ pertaining to the source code of Symantec software products. One of the documents was a detailed technical overview of Norton Anti-Virus, Quarantine Server Packaging API Specification, Version 1.0.  The other document describes a Symantec Immune System Gateway Array Setup technology.

18.   On January 5, 2012, and under YamaTough's threat to disclose the source code of additional Symantec software products, Symantec publicly revealed, for the first time, that during 2006, hackers had stolen source code for two of its enterprise security products (Symantec Endpoint Protection 11.0 and Symantec Antivirus 10.2).

19.   Symantec, however, initially denied its internal network had been hacked, instead reporting the hackers stole the source code from servers in India's Military and Intelligence government agencies.

20.   On January 17, 2012, however, Symantec reversed course and confirmed that, in fact, the source code to the Compromised Symantec Products was stolen as part of the 2006 breach of its internal network.  Symantec suspected as early as 2006 that its network had been breached but, on information and belief, did not perform a thorough investigation of the breach to determine precisely what had been stolen until the hackers talked publicly about it in early

BLOOD HURST & O'REARDON, LLP

5

CLASS ACTION COMPLAINT

1  January 2012. In the meantime, Symantec failed to warn its customers and/or take any
2  proactive precautionary measures to protect the security and functionality of the software it
3  marketed and sold to Plaintiff and Class Members. In fact, except as otherwise detailed herein,
4  and on information and belief, as a part of its decision to conceal the problem from Plaintiff
5  and Class Members, Symantec took none of the proactive precautionary measures available to
6  it.

7      21.    Even though the stolen source code pertains to the 2006 versions of the
8  Compromised Symantec Products, there are elements of the code in each of the products still
9  relevant today. Significant potential exists for the hackers to use the stolen source code to
10  discern how to defeat some of the protections built into the now Compromised Symantec
11  Products.

12      22.    Also on January 17, 2012, Symantec warned purchasers of pcAnywhere, one of
13  the Compromised Symantec Products that facilitates remote access of personal computers, that
14  they face "a slightly increased security risk" because of the exposure and that "Symantec is
15  currently in the process of … provid[ing] remediation steps to maintain the protection of their
16  devices and information."

17      23.    Symantec was so concerned about the heightened pcAnywhere security risk
18  that on January 23, 2012, Symantec issued a 15-page Technical White Paper, entitled
19  "Symantec pcAnywhere Security Recommendations." In the original version of the Technical
20  White Paper, Symantec warned its customers that "[m]alicious users with access to the source
21  code have an increased ability to identify vulnerabilities and build new exploits." Symantec
22  further warned that pcAnywhere customers "not following general security best practices are
23  susceptible to man-in-the-middle attacks which can reveal authentication and session
24  information." *Id.* Symantec also recommended "disabling the product until Symantec
25  release[d] a final set of software updates that resolve currently known vulnerability risks." *Id.*

26      24.    In the original version of the Technical White Paper, Symantec also warned its
27  pcAnywhere customers that:

28

BLOOD HURST & O'REARDON, LLP

00057619

6

1

2

3

4

There are also secondary risks associated with this situation. If the malicious user obtains the cryptographic key *they have the capability to launch unauthorized remote control sessions. This in turn allows them access to systems and sensitive data. If the cryptographic key itself is using Active Directory credentials, it is also possible for them to perpetrate other malicious activities on the network.*

5

(emphasis added).

6

7

8

9

10

25.    When Symantec was publicly engaged in damage control, it was also engaged in private email negotiations with YamaTough for a $50,000 payout in exchange for destroying the stolen source code and not publishing any more of it on the Internet. As part of the proposed deal, Symantec—incredibly—required the hackers to say that they lied about hacking into Symantec's network and stole the source code:

11

12

13

14

We can't pay you $50,000 at once for the reasons we discussed previously. We can pay you $2,500 per month for the first three months. *In exchange, you will make a public statement on behalf of your group that you lied about the hack* (as you previously stated). Once that's done, we will pay the rest of the $50,000 to your account and you can take it all out at once. That should solve your problem.

15

16

17

18

(emphasis added). In addition to fostering a statement of questionable veracity, Symantec's offer also directly conflicts with a February 7, 2012 statement on its website that "Symantec never made any offer to meet the hackers' extortion demands." *See* http://www.symantec.com/theme.jsp?themeid=anonymous-code-claims.

19

20

26.    The negotiations between Symantec and YamaTough ultimately broke down on February 6, 2012, when the hackers published the pcAnywhere source code on the Internet.

21

22

23

24

27.    Thereafter, YamaTough and Symantec publicly stated their participation in the negotiations had been a ruse. YamaTough said he was always going to publish the source code, while Symantec said law enforcement had been directing its side of the talks. "We tricked them into offering us a bribe so we could humiliate them," YamaTough told Reuters.

25

26

27

28

28.    In a February 7, 2012 statement on its website, Symantec confirmed it "anticipate[s] that at some point, they [the hackers] will post the code for the 2006 versions of Norton Antivirus Corporate Edition and Norton Internet Security." *See* http://www.symantec.com/theme.jsp?themeid=anonymous-code-claims.

BLOOD HURST & O'REARDON, LLP

29.     To date, Symantec has not offered to compensate Plaintiff and Class Members for the lost benefit of their bargain in connection with purchasing, leasing and/or licensing the Compromised Symantec Products.

## CLASS ACTION ALLEGATIONS

30.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action as a national class action for herself and all members of the following class of similarly situated individuals and entities (the "Nationwide Class"):

> All natural persons and entities that, for use and not resale, purchased, leased and/or licensed pcAnywhere, Norton SystemWorks (Norton Utilities and Norton GoBack), Norton Antivirus Corporate Edition and/or Norton Internet Security software (*i.e.*, the Compromised Symantec Products) containing all or a portion of the 2006 version of the source codes for such products. Excluded from the Class are Symantec, any entity in which any Symantec has a controlling interest, Symantec and its controlled entities' officers, directors, employees, agents and assigns, the Court and Court personnel.

31.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure and the California Consumers Legal Remedies Act, Civil Code §1750, *et seq.* ("CLRA"), Plaintiff also brings this action against Symantec for herself and all members of the following sub-class of similarly situated individuals and entities (the "CLRA Sub-Class"):

> All natural persons who, for personal, family and/or household purposes and not resale, purchased, leased and/or licensed pcAnywhere, Norton SystemWorks (Norton Utilities and Norton GoBack), Norton Antivirus Corporate Edition and/or Norton Internet Security software (*i.e.*, the Compromised Symantec Products) containing all or a portion of the 2006 version of the source codes for such products. Excluded from the CLRA Sub-Class are Symantec, any entity in which any Symantec has a controlling interest, Symantec and its controlled entities' officers, directors, employees, agents and assigns, the Court and Court personnel.

32.     On information and belief, the putative Nationwide Class and putative CLRA Sub-Class each comprise hundreds of thousands of persons and entities, making joinder impracticable. Prosecution of this matter as a class action will provide substantial benefits and efficiencies to the Parties and the Court.

33.     The rights of each Nationwide Class Member and each CLRA Sub-Class Member were violated in a virtually identical manner because of Symantec's wrongful actions

BLOOD HURST & O'REARDON, LLP

00057619

1   and/or inaction; to wit, marketing, advertising, selling, leasing and/or licensing the

2   Compromised Symantec Products to Plaintiff, the Nationwide Class Members and the CLRA

3   Sub-Class Members.

4       34.     Questions of law and fact common to all Nationwide Class Members and

5   CLRA Sub-Class Members exist and predominate over any questions affecting only individual

6   Members of the Nationwide Class and the CLRA Sub-Class including, *inter alia*:

7       a)  whether Symantec breached the California Consumers Legal Remedies Act,
            California Civil Code §1750, *et seq.*, by marketing, advertising, selling, leasing
8           and/or licensing the Compromised Symantec Products to Plaintiff and Class
            Members;
9

10      b)  whether Symantec breached California Business and Professions Code §17200
            by marketing, advertising, selling, leasing and/or licensing the Compromised
11          Symantec Products to Plaintiff and Class Members;

12      c)  whether Symantec breached its implied contracts with Plaintiff and Class
            Members by selling, leasing and/or licensing the Compromised Symantec
13          Products to them when they paid for fully functional computer system and data
            security software;
14

15      d)  whether Symantec breached their express warranties to Plaintiff and Class
            Members by selling, leasing and/or licensing the Compromised Symantec
16          Products to them when they paid for fully functional computer system and data
            security software;
17

18      e)  whether Symantec has been unjustly enriched by selling, leasing and/or
            licensing the Compromised Symantec Products to Plaintiff and Class Members;

19      f)  whether Symantec should be compelled to refund the money wrongfully
            charged to and collected from Plaintiff and Class Members for the
20          Compromised Symantec Products under the equitable doctrine of money had
            and received.
21

22      g)  whether Plaintiff and Class Members sustained damages because of Symantec's
            wrongful actions and/or inaction; to wit, whether Plaintiff and Class Members
23          did not receive the benefit of their bargains when purchasing, leasing and/or
            licensing the Compromised Symantec Products;
24

25      h)  whether Plaintiff and Class Members are entitled to recover the benefit of their
            bargains in connection with purchasing, leasing and/or licensing the
26          Compromised Symantec Products;

27      i)  whether Plaintiff and Class Members are entitled to recover actual damages,
            statutory damages and/or punitive damages;
28

9

BLOOD HURST & O'REARDON, LLP

00057619

j)    whether Plaintiff and Class Members are entitled to restitution, disgorgement and/or other equitable relief; and

k)    whether Plaintiff and Class Members are entitled to injunctive relief.

35.    Plaintiff and her counsel will fairly and adequately represent the interests of the Nationwide Class Members and the CLRA Sub-Class Class Members.  Plaintiff has no interests antagonistic to, or in conflict with, the interests of the Nationwide Class Members and/or CLRA Sub-Class Members.  Plaintiff's lawyers are highly experienced in the prosecution of consumer class actions and complex commercial litigation.

36.    Plaintiff's claims are typical of the claims of the claims of the Nationwide Class Members and/or CLRA Sub-Class Members in that Plaintiff's claims and all Class Members' claims arise from Symantec's uniform and wrongful conduct; to wit, knowingly, fraudulently, willfully, wantonly, negligently and/or otherwise wrongfully marketing, advertising, selling, leasing and/or licensing the Compromised Symantec Products to Plaintiff and the Nationwide Class Members and/or CLRA Sub-Class Members.

37.    A class action is superior to all other available methods for fairly and efficiently adjudicating the claims of Plaintiff and the Nationwide Class Members and/or CLRA Sub-Class Members. Plaintiff, the Nationwide Class Members and/or CLRA Sub-Class Members have been harmed by Symantec's wrongful actions and/or inaction; to wit, Plaintiff and the Nationwide Class Members and/or CLRA Sub-Class Members did not receive the benefit of their bargains when purchasing, leasing and/or licensing the Compromised Symantec Products.  Litigating this case as a class action will reduce the possibility of repetitious litigation relating to Symantec's wrongful actions and/or inaction.

38.    Class certification, therefore, is appropriate under Fed. R. Civ. P 23(b)(3), because the above common questions of law or fact predominate over any questions affecting individual Members of the Nationwide Class and/or CLRA Sub-Class, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

39.    Class certification also is appropriate under Fed R. Civ. P. 23(b)(2) because Symantec has acted or refused to act on grounds generally applicable to the Class, so that final

BLOOD HURST & O'REARDON, LLP

10

1   injunctive relief or corresponding declaratory relief is appropriate as to the Nationwide Class

2   and/or CLRA Sub-Class as a whole.

3       40.    The expense and burden of litigation would substantially impair the ability of

4   Plaintiff, the Nationwide Class Members and/or the CLRA Sub-Class Members to pursue

5   individual lawsuits to vindicate their rights.  Absent a class action, Symantec will retain the

6   benefits of its wrongdoing despite its serious violations of the law.

7                        **CLAIMS FOR RELIEF/CAUSES OF ACTION**

8                                      **COUNT I**

9           **VIOLATION OF THE CALIFORNIA CONSUMERS LEGAL REMEDIES ACT**
            **(California Civil Code §1750, *et seq.*, for Plaintiff and CLRA Sub-Class Members)**
10

11      41.    The preceding factual statements and allegations are incorporated herein by

12  reference.

13      42.    This cause of action is brought under the CLRA.  Plaintiff and CLRA Sub-

14  Class Members are consumers under the CLRA, as defined in Civil Code §1761(d), because

15  they sought to acquire and/or acquired, by purchase, lease and/or license, the Compromised

16  Symantec Products for personal, family and/or household purposes.   The Compromised

17  Symantec Products are goods under the CLRA, as defined in Civil Code §1761(a), because

18  they are tangible chattels bought, leased and/or licensed for use primarily for personal, family

19  and/or household purposes.

20      43.    Symantec violated (and, on information and belief, continues to violate) the

21  CLRA by engaging in the following unfair or deceptive acts and practices proscribed by the

22  CLRA, which intended to result and/or resulted in the sale, lease and/or license of the

23  Compromised Symantec Products to Plaintiff and CLRA Sub-Class Members:

24      (a)    representing   that   the   Compromised   Symantec   Products   have
               characteristics, uses   and/or   benefits which   they   do   not   have   (*i.e.*,
25             uncompromised   source   code   that,   *inter alia*,   (i)   secures   and   manages
               information against more risks at more points, more completely and efficiently
26             than any other company and (ii) eliminates risks to information, technology and
               processes independent of the device, platform, interaction or location).   Civil
27             Code §1770(a)(5).

28

BLOOD HURST & O'REARDON, LLP

                                          11

BLOOD HURST & O'REARDON, LLP

(b)    representing that the Compromised Symantec Products are of a particular standard, quality or grade when they are of another (*i.e.*, the Compromised Symantec Products contains uncompromised source code that, *inter alia*, (i) secures and manages information against more risks at more points, more completely and efficiently than any other company and (ii) eliminates risks to information, technology and processes independent of the device, platform, interaction or location). Civil Code §1770(a)(7).

(c)    advertising that the Compromised Symantec Products contain uncompromised source code that, *inter alia*, (i) secures and manages information against more risks at more points, more completely and efficiently than any other company and (ii) eliminates risks to information, technology and processes independent of the device, platform, interaction or location with the intent not to sell the Compromised Symantec Products as advertised. Civil Code §1770(a)(9).

(d)    representing that the Compromised Symantec Products were supplied under a previous representation (*i.e.*, that the Compromised Symantec Products contain uncompromised source code that, *inter alia*, (i) secures and manages information against more risks at more points, more completely and efficiently than any other company and (ii) eliminates risks to information, technology and processes independent of the device, platform, interaction or location) when they were not. Civil Code §1770(a)(16).

Symantec violated (and, on information and belief, continues to violate) the CLRA by making the above false representations when it knew, or should have known, that the representations were unsubstantiated, false and misleading when made.

44.    Under Civil Code §1782(a), Plaintiff notified Symantec in writing via certified mail of its above specific violations of Civil Code §1770, and demanded that Symantec (i) compensate Plaintiff and CLRA Sub-Class Members for the lost benefit of the bargain in connection with their purchases, leases and/or licenses of the Compromised Symantec Products, and (ii) notify all affected consumers (*i.e.*, CLRA Sub-Class Members) of Symantec's intent to so act. A copy of Plaintiff's demand letter is attached as Exhibit A.

45.    Under Civil Code §1782(d), Plaintiff and CLRA Sub-Class Members seek a Court order enjoining Symantec from misrepresenting, falsely advertising and selling, leasing and/or licensing the Compromised Symantec Products. Plaintiff and CLRA Sub-Class Members also seek restitution and disgorgement.

46.    If Symantec fails to compensate or agree to compensate Plaintiff and CLRA Sub-Class Members for the lost benefit of the bargain in connection with their purchases,

BLOOD HURST & O'REARDON, LLP

1  leases and/or licenses of the Compromised Symantec Products and notify all affected

2  consumers (*i.e.*, Class Members) within thirty (30) days of the date of the Civil Code §1782(a)

3  written notice, Plaintiff intends to amend this Complaint and formally assert claims for actual

4  damages, punitive damages and/or statutory damages, as appropriate.

5        47.     Symantec's above-described wrongful conduct was willful, fraudulent, wanton

6  and designed to mislead consumers into believing the Compromised Symantec Products

7  contain uncompromised source code that eliminates risks to information, technology and

8  processes independent of the device, platform, interaction or location when, in fact, consumers

9  who purchased, leased and/or licensed the Compromised Symantec Products and installed

10  them on their computers did not receive the full benefit of the Symantec products for which

11  they bargained and paid and, in addition, unknowingly placed their computers at risk for

12  intrusion by hackers and unknowingly placed their personally identifiable information at risk

13  for theft and misuse.

14        48.     Under Civil Code §1780(d), the affidavit demonstrating this action has been

15  commenced in the proper forum is attached as Exhibit B.

16  **COUNT II**

17  **UNLAWFUL BUSINESS ACTS AND PRACTICES**
**(California Business & Professions Code §17200 for Plaintiff,**

18  **the General Public and Class Members)**

19        49.     The preceding factual statements and allegations are incorporated herein by

20  reference.

21        50.     California Business & Professions Code §17200 prohibits any "unlawful, unfair

22  or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."

23  For the reasons discussed above, Symantec violated (and, on information and belief, continues

24  to violate) California Business & Professions Code §17200 by engaging in the above-

25  described and prohibited unlawful, unfair, fraudulent, deceptive, untrue and misleading acts

26  and practices.

27        51.     Symantec's above wrongful actions at issue —to wit, knowingly, intentionally,

28  recklessly and/or negligently marketing, advertising and selling the Compromised Symantec

13
CLASS ACTION COMPLAINT

1    Products to Plaintiff and Class Members—were centered in, carried out, effectuated in and/or

2    perfected in the State of California. Symantec knew about the breach of its internal network as

3    early as 2006 and, by exercising reasonable care and prudent business practices, should have

4    known that the source code of the Compromised Symantec Products had been stolen and

5    compromised and the security and functionality of the products impaired. Symantec's

6    wrongful actions and/or inaction within California injured Plaintiff and Class Members; to wit,

7    they did not receive the benefit of the Symantec computer system and data security software

8    products for which they bargained and paid.

9       52.    As first revealed to Plaintiff and Class Members in January 2012, commencing

10   in 2006, on a precise date unknown by Plaintiff and Class Members and, on information and

11   belief, continuing through the present, Symantec committed (and continues to commit) acts of

12   unfair competition, as defined in California Business and Professions Code §17200, *et seq*. by

13   engaging in the above-described wrongful acts and practices.

14      53.    Symantec's above-described wrongful acts and practices also constitute

15   unlawful, unfair and fraudulent business acts and practices within the meaning of California

16   Business and Professions Code §17200, *et seq*.

17      54.    Symantec's above-described wrongful acts and practices also constitute

18   "fraudulent" business acts and practices in that the representations and omissions described

19   herein are false and/or likely to deceive past, current and potential customers.

20      55.    Symantec's above-described wrongful acts and practices also constitute

21   "unfair" business acts and practices in that the harm caused by Symantec's above wrongful

22   conduct outweighs any utility of such conduct, and such conduct (i) offends public policy, (ii)

23   is immoral, unscrupulous, unethical, oppressive, deceitful and offensive and/or (iii) has caused

24   (and will continue to cause) substantial injury to consumers such as Plaintiff and Class

25   Members.

26      56.    Plaintiff alleges violations of California consumer protection, unfair

27   competition and truth in advertising laws resulting in harm to consumers. Plaintiff asserts

28   violations of public policy against engaging in false and misleading advertising, unfair

BLOOD HURST & O'REARDON, LLP

14

00057619

1    competition and deceptive conduct towards consumers. This conduct also constitutes

2    violations of the "unfair" prong of California Business and Professions Code §17200.

3         57.    Symantec's advertising, including its labeling, as described herein, also

4    constitutes unfair, deceptive, untrue and misleading advertising in violation of California

5    Business and Professions Code §17200.

6         58.    Plaintiff and Class Members reserve the right to allege other violations of law

7    that Symantec committed constituting unlawful business acts or practices violating California

8    Business and Professions Code §17200.

9         59.    On information and belief, Symantec's above-described unlawful, fraudulent

10   and unfair business acts and practices, except as otherwise indicated herein, continue to this

11   day and are ongoing. As a direct and/or proximate result of Symantec's wrongful conduct,

12   Plaintiff and Class Members have been (and will continue to be) harmed, for which they are

13   entitled to compensation for the lost benefit of the bargain in connection with their purchases,

14   leases and/or licenses of the Compromised Symantec Products, restitution, disgorgement

15   and/or other equitable relief.

16        60.    Plaintiff, for himself and the Class Members, also is entitled to injunctive relief,

17   under California Business and Professions Code §§17203; 17204, to stop Symantec's above-

18   described wrongful acts and practices and require Symantec to engage in a corrective

19   advertising campaign or, in the alternative, for restitution and/or disgorgement.

20                                    **COUNT III**

21                              **BREACH OF CONTRACT**
                              **(For Plaintiff and Class Members)**
22

23        61.    The preceding factual statements and allegations are incorporated herein by

24   reference.

25        62.    Plaintiff and Class Members, on the one hand, and Symantec, on the other

26   hand, mutually intended to form and, in fact, entered into valid and enforceable contracts

27   arising from, and evidenced by, the Parties' acts and conduct; to wit, sales, leases and/or

28   licenses of the Compromised Symantec Products by Symantec to Plaintiff and Class Members.

BLOOD HURST & O'REARDON, LLP

1    Under the contracts, in exchange for the Plaintiff's and Class Members' money, Symantec

2    promised to deliver uncompromised versions of the Compromised Symantec Products that,

3    *inter alia,* (i) secure and manage information against more risks at more points, more

4    completely and efficiently than any other company and (ii) eliminate risks to information,

5    technology and processes independent of the device, platform, interaction or location.

6    　　　63.　　All conditions precedent to Symantec's liability under these contracts have

7    been performed by Plaintiff and Class Members. Plaintiff and Class Members performed all

8    of their obligations under the contracts by, *inter alia,* delivering to Symantec the retail price

9    for each purchased, leased and/or licensed unit of the Compromised Symantec Products.

10   Symantec, however, breached its contracts with Plaintiff and Class Members by knowingly,

11   maliciously, fraudulently, willfully, wantonly, negligently and/or wrongfully delivering the

12   Compromised Symantec Products to them. Symantec's wrongful actions constitute breach of

13   contract at common law.

14   　　　64.　　Symantec's above wrongful actions directly and/or proximately caused Plaintiff

15   and Class Members to suffer damages in the form of, *inter alia,* the lost benefit of the bargain

16   in connection with their purchases, leases and/or licenses of the Compromised Symantec

17   Products; to wit, although Plaintiff and Class Members paid for uncompromised versions of

18   the Compromised Symantec Products, they, in fact, received compromised versions of the

19   Compromised Symantec Products that placed their computers at risk for intrusion by hackers

20   and placed their personally identifiable information at risk for theft and misuse.

21   　　　　　　　　　　　　　　　　　**COUNT IV**

22   　　　　　　　　　　　　　**BREACH OF WARRANTY**
     　　　　　　　　　　　　**(For Plaintiff and Class Members)**

23

24   　　　65.　　The preceding factual statements and allegations are incorporated herein by

25   reference.

26   　　　66.　　As set forth above, Plaintiff and each Class Member entered into a valid and

27   enforceable implied contract with Symantec when Plaintiff and Class Members purchased,

28   leased and/or licensed the Compromised Symantec Products. The terms of such contracts

BLOOD HURST & O'REARDON, LLP

16

1  include the marketing, advertising, representations, promises and affirmations of fact made by

2  Symantec; to wit, that the Compromised Symantec Products, *inter alia,* (i) secure and manage

3  information against more risks at more points, more completely and efficiently than any other

4  company and (ii) eliminate risks to information, technology and processes independent of the

5  device, platform, interaction or location. Such marketing, advertising, representations,

6  promises and affirmations of fact made by Symantec constitute express warranties, became

7  part of the basis of the bargain, and is part of a standardized contract between Plaintiff and

8  Class Members, on the one hand, and Symantec, on the other hand.

9      67.    All conditions precedent to Symantec's liability under these implied contracts

10  have been performed by Plaintiff and Class Members.

11     68.    Symantec breached the terms of its implied contracts with Plaintiff and Class

12  Members, including the above-described express warranties, by not delivering to Plaintiffs and

13  Class Members fully functional and uncompromised versions of the Compromised Symantec

14  Products that, in fact, placed their computers at risk for intrusion by hackers and placed their

15  personally identifiable information at risk for theft and misuse. Symantec's wrongful actions

16  constitute breach of warranty at common law.

17     69.    Symantec's above wrongful actions directly and/or proximately caused

18  Plaintiff and Class Members to suffer damages in the form of, *inter alia,* the lost benefit of the

19  bargain in connection with their purchases, leases and/or licenses of the Compromised

20  Symantec Products; to wit, although Plaintiff and Class Members paid for fully functional and

21  uncompromised versions of the Compromised Symantec Products, they, in fact, received

22  compromised versions of the Compromised Symantec Products that placed their computers at

23  risk for intrusion by hackers and placed their personally identifiable information at risk for

24  theft and misuse.

25

26

27

28

BLOOD HURST & O'REARDON, LLP

17

**COUNT V**

**MONEY HAD AND RECEIVED**
**(For Plaintiff and Class Members)**

70.     The preceding factual statements and allegations are incorporated herein by reference.

71.     By its above-described wrongful actions and/or inaction, Symantec holds money—*i.e.*, the wrongfully charged and collected price paid by Plaintiff and Class Members to Symantec for each purchase, lease and/or license of the Compromised Symantec Products— that, in equity and good conscience, belongs to Plaintiff and Class Members. Symantec should be compelled to refund such wrongfully charged and collected purchase prices paid by Plaintiff and Class Members under the common law equitable doctrine of money had and received.

**RELIEF REQUESTED**

72.     The preceding factual statements and allegations are incorporated herein by reference.

73.     **ACTUAL DAMAGES.** As a direct and/or proximate result of Symantec's above-described wrongful actions and/or inaction, Plaintiff and Class Members suffered (and continue to suffer) damages in the form of, *inter alia*, the price paid by Plaintiff and Class Members to Symantec for each purchase, lease and/or license of the Compromised Symantec Products—for which they are entitled to compensation. Alternatively, Plaintiff and Class members are entitled to restitution and/or disgorgement. Plaintiff's and Class Members' damages were foreseeable by Symantec and exceed the minimum jurisdictional limits of this Court. All conditions precedent to Plaintiff's and Class Members' claims for actual damages have been performed and/or occurred.

74.     **PUNITIVE DAMAGES.** Symantec's wrongful acts were committed intentionally, willfully, wantonly and/or with reckless disregard for the rights and interests of Plaintiff and Class Members. Accordingly, Plaintiff and Class Members are entitled to an award of punitive damages against Symantec—both as punishment and to discourage such wrongful

18

CLASS ACTION COMPLAINT

BLOOD HURST & O'REARDON, LLP

00057619

1  conduct in the future.  All conditions precedent to Plaintiff's and Class Members' claims for

2  relief have been performed or occurred.

3      75.  **INJUNCTIVE RELIEF.**  Plaintiff and Class Members also are entitled to an order

4  (i) enjoining the marketing, advertising, selling, leasing and/or licensing of any version of the

5  Compromised Symantec Products containing any portion of the stolen and compromised

6  source code described herein, and (ii) requiring Symantec to replace Plaintiff's and Class

7  Members' Compromised Symantec Products with uncompromised versions of such

8  products—under, *inter alia*, California Business and Professions Code §§17203; 17204; 17535

9  and California Civil Code §1780(a)(2).  All conditions precedent to Plaintiff's and Class

10  Members' claims for injunctive relief have been performed and/or occurred.

11      76.  **ATTORNEYS' FEES, LITIGATION EXPENSES AND COSTS.**  Plaintiff and Class

12  Members also are entitled to recover their attorneys' fees, litigation expenses and court costs in

13  prosecuting this action under, *inter alia*, California Code of Civil Procedure §1021.5 and

14  California Civil Code §1780.  All conditions precedent to Plaintiff's and Class Members'

15  claims for attorneys' fees, litigation expenses and court costs have been performed and/or

16  occurred.

17      **WHEREFORE,** Plaintiff, for herself and the Class Members, respectfully requests

18  that (i) Symantec be cited to appear and answer this lawsuit, (ii) this action be certified as a

19  class action, (iii) Plaintiff be designated the Class Representative, and (iv) Plaintiff's counsel

20  be appointed as Class Counsel.  Plaintiff, for herself and the Class Members, further requests

21  that upon final trial or hearing, judgment be awarded against Symantec, in favor of Plaintiff

22  and the Class Members, for:

23      (i)    actual damages in an amount to be determined by the trier of fact;

24      (ii)    punitive damages;

25      (iii)    restitution and/or disgorgement as described above;

26      (iv)    equitable relief as requested above;

27      (v)    injunctive relief as requested above;

28      (vi)    pre- and post-judgment interest at the highest applicable legal rates;

BLOOD HURST & O'REARDON, LLP

19

CLASS ACTION COMPLAINT

00057619

1    (vii)   attorneys' fees and litigation expenses incurred through trial and any appeals;

2    (iv)   costs of suit; and

3    (v)   such other and further relief this Court deems just and proper.

4                                **JURY DEMAND**

5        Plaintiff, for herself and the Class Members, respectfully demands a trial by jury on all

6    of her claims and causes of action so triable.

7

8    Dated: April 22, 2013                 BLOOD HURST & O'REARDON, LLP
                                           TIMOTHY G. BLOOD (149343)
9                                          THOMAS J. O'REARDON II (247952)
                                           PAULA M. ROACH (254142)

10

11                                         By: TIMOTHY G. BLOOD

12                                         701 B Street, Suite 1700

13                                         San Diego, CA  92101
                                           Telephone: 619/338-1100
14                                         619/338-1101 (fax)
                                           tblood@bholaw.com
15                                         toreardon@bholaw.com
                                           proach@bholaw.com
16

17                                         BARNOW AND ASSOCIATES, PC
                                           BEN BARNOW
18                                         One N. LaSalle Street, Suite 4600
                                           Chicago, IL  60602
19                                         Telephone  312/621-2000
                                           312/641-5504 (fax)
20                                         b.barnow@barnowlaw.com

21                                         THE COFFMAN LAW FIRM
                                           RICHARD L. COFFMAN
22                                         First City Building
                                           505 Orleans Street, Suite 505
23                                         Beaumont, TX  77701
                                           Telephone  409/833-7700
24                                         866/835-8250 (fax
                                           rcoffman@coffmanlawfirm.com
25
                                           *Attorneys for Plaintiff*
26

27

28

                                    20
                            CLASS ACTION COMPLAINT

BLOOD HURST & O'REARDON, LLP

# EXHIBIT A



**BLOOD
HURST &
O'REARDON** | LLP

Timothy G. Blood
tblood@bholaw.com

April 22, 2013

<u>**VIA CERTIFIED MAIL (RETURN RECEIPT)**</u>
**(RECEIPT NO. 7005 0390 0005 9156 4961)**

Steve Bennett
President and CEO
Symantec Corporation
350 Ellis Street
Mountain View, CA 94043

Re:   Compromised Symantec Products Lawsuit Demand Letter

Dear Mr. Bennett:

We represent Kathleen Haskins ("Plaintiff") and all other consumers similarly situated in an action against Symantec Corporation ("Defendant"), arising out of, *inter alia*, Defendant's marketing, advertising, sale, lease and/or license of 2006 versions of pcAnywhere, Norton SystemWorks (Norton Utilities and Norton GoBack), Norton Antivirus Corporate Edition, and Norton Internet Security (collectively, "Compromised Symantec Products").

Plaintiff and other similarly situated consumers purchased the Compromised Symantec Products unaware of the fact that Defendant's representations that the products contained uncompromised source code that, *inter alia*, secures and manages information against more risks at more points, more completely and efficiently than any other company, and eliminates risks to information, technology and processes independent of the device, platform, interaction or location were not truthful. Despite Defendant's representations, the Compromised Symantec Products were compromised in 2006 when Defendant's network was breached and its source code stolen. Instead of disclosing the breach or the source code theft to its customers, or taking any proactive measures, Defendant continued to market, advertise, sell, lease, and/or license the Compromised Symantec Products to Plaintiff and other members of the Class as if nothing had happened.

The full claims, including the facts and circumstances surrounding these claims, are detailed in the Class Action Complaint, a copy of which is attached and incorporated by this reference.

Defendant's practices constitute violations of the Consumers Legal Remedies Act, California Civil Code § 1750 *et seq.* Specifically, Defendant's practices violate California Civil Code § 1770(a), *inter alia*, the following subdivisions:

00058934



Steve Bennett
Symantec Corporation
April 22, 2013
Page 2

    (5)    Representing that goods or services have ... approval, characteristics, ... uses [or] benefits ... which they do not have...

    \*\*\*

    (7)    Representing that goods or services are of a particular standard, quality or grade ... if they are of another.

    \*\*\*

    (9)    Advertising goods or services with intent not to sell them as advertised.

    \*\*\*

    (16)    Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

As detailed in the attached Complaint, Defendant's practices also violate the California Business and Professions Code § 17200 *et seq.*, breach of implied contract, breach of warranty, unjust enrichment, and money had and received.

While the Complaint constitutes sufficient notice of the claims asserted, pursuant to California Civil Code § 1782, we hereby demand on behalf of our client and all others similarly situated that Defendant immediately correct and rectify these violations by ceasing to market, advertise, sell, lease or license any version of the Compromised Symantec Products containing any portion of the stolen and compromised code, and initiate a corrective advertising campaign. In addition, Defendant must offer to refund the purchase price to all consumer purchasers of the Compromised Symantec Products, plus provide reimbursement for interest, costs, and fees.

We await your response.

Best regards,

TIMOTHY G. BLOOD

Enclosure

00058934

# EXHIBIT B

1   BLOOD HURST & O'REARDON, LLP
     TIMOTHY G. BLOOD (149343)
2   THOMAS J. O'REARDON II (247952)
     PAULA M. ROACH (254142)
3   701 B Street, Suite 1700
     San Diego, CA  92101
4   Telephone: 619/338-1100
     619/338-1101 (fax)
5   tblood@bholaw.com
     toreardon@bholaw.com
6   proach@bholaw.com

7   BARNOW AND ASSOCIATES, PC
     BEN BARNOW
8   One N. LaSalle Street, Suite 4600
     Chicago, IL  60602
9   Tel:  312/621-2000
     312/641-5504 (fax)
10  b.barnow@barnowlaw.com

11  THE COFFMAN LAW FIRM
     RICHARD L. COFFMAN
12  First City Building
     505 Orleans Street, Suite 505
13  Beaumont, TX  77701
     Tel:  409/833-7700
14  866/835-8250 (fax
     rcoffman@coffmanlawfirm.com
15
     Attorneys for Plaintiff
16

17              UNITED STATES DISTRICT COURT

18     NORTHERN DISTRICT OF CALIFORNIA - SAN JOSE DIVISION

| 19 | KATHLEEN HASKINS, on behalf of herself and all others similarl situated, | Case No.: |
|----|----|----|
| 20 | | AFFIDAVIT OF TIMOTHY G. BLOOD PURSUANT TO CALIFORNIA CIVIL CODE §1780(d) |
| 21 | Plaintiff, | |
| 22 | v. | CLASS ACTION |
| 23 | SYMANTEC CORPORATION, | JURY TRIAL DEMANDED |
| 24 | Defendant. | |

Attorneys sidebar: BLOOD HURST & O'REARDON, LLP

I, TIMOTHY G. BLOOD, declare as follows:

1.     I am an attorney duly licensed to practice before all of the courts of the State of California. I am the managing partner of the law firm of Blood Hurst & O'Reardon LLP, one of the counsel of record for plaintiff in the above-entitled action.

2.     Defendant Symantec Corporation ("Symantec") has done and is doing business in Santa Clara County.  Such businesses include providing security, storage and systems management solutions to consumers, small businesses, and large organizations to secure and manage their information through antivirus, data management utility and enterprise software products. Furthermore, Symantec is headquartered in Mountain View, California, which is in Santa Clara County.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this 22nd day of April, 2013, at San Diego, California.

By: _____
TIMOTHY G. BLOOD

BLOOD HURST & O'REARDON, LLP

AFFIDAVIT OF TIMOTHY G. BLOOD PURSUANT TO CALIFORNIA CIVIL CODE §1780(d)

00058936