1

2

3

4            UNITED STATES DISTRICT COURT

5            NORTHERN DISTRICT OF CALIFORNIA

6

7    KATHLEEN HASKINS,                        Case No.  13-cv-01834-JST

            Plaintiff,
8
                                              **ORDER GRANTING MOTION TO**
9        v.                                   **DISMISS THE SECOND AMENDED**
                                              **COMPLAINT**
    SYMANTEC CORPORATION,
10                                            ECF No. 22
            Defendant.
11

12          Before the Court is Defendant Symantec Corporation's ("Defendant") Motion to Dismiss

13   Plaintiff's Second Amended Complaint ("Motion"), ECF No. 22, which came for hearing on

14   November 7, 2013.

15   **I.      BACKGROUND**

16          **A.      Factual Background**[1]

17          The Court accepts the following allegations as true for the purpose of resolving

18   Defendant's motion to dismiss.  Cahill v. Liberty Mutual Ins. Co., 80 F.3d 336, 337–38 (9th Cir.

19   1996).

20          Defendant Symantec Corporation produces antivirus, data management utility and

21

22

23   _____

24   [1] In addition to accepting the allegations of the SAC as true, the Court also GRANTS Defendant's
     unopposed Request that the Court take judicial notice of screenshots of certain pages on
25   Symantec's website, and Symantec's 2007 and 2008 Software Service License Agreements.  ECF
     No. 35.  "A court may . . . consider certain materials—documents attached to the complaint,
26   documents incorporated by reference in the complaint, or matters of judicial notice—without
     converting the motion to dismiss into a motion for summary judgment."  United States v. Ritchie,
27   342 F.3d 903, 908 (9th Cir. 2003).  The SAC makes extensive references to the representations on
     Symantec's website, and in alleging a breach of contract implicates the terms of Symantec's
28   standard license agreements during the period Plaintiff alleges she purchased Norton Antivirus.

United States District Court
Northern District of California

1    enterprise software products.  Second Amended Complaint ("SAC") ¶¶ 10-11, ECF No. 33.[2]  In

2    2006, hackers infiltrated Symantec's network and stole the source code used in the 2006 versions

3    of Symantec's Norton Antivirus, pcAnywhere, Norton SystemWorks (Norton Utilities and Norton

4    GoBack), Norton Antivirus Corporate Edition, and Norton Internet Security software (hereinafter,

5    the "Products"). SAC ¶¶ 3, 32-33.  Plaintiff alleges upon information and belief that Symantec

6    knew as early as 2006 that its network had been breached and the source code stolen, but neither

7    performed a reasonable investigation into the breach nor informed consumers.  ¶¶ 31-32.

8            Plaintiff Kathleen Haskins ("Plaintiff") purchased Symantec's Norton Antivirus software

9    online directly from Symantec during late 2007 or early 2008.  ¶ 9.  Plaintiff's version of Norton

10   Antivirus contained all or a portion of the compromised 2006 source code.  Id.  "Plaintiff was

11   exposed to Symantec's claims on its retail website that Norton Antivirus provides computer, data,

12   and email security by, inter alia, blocking viruses and spyware."  Id.  "Since 2006, Symantec has

13   consistently represented to consumers throughout the United States that the Compromised

14   Symantec Products provide secure access to computers and protect computers and data from

15   malware, viruses, and hackers."  ¶ 13. "Plaintiff purchased the Norton Antivirus software for the

16   reasons advertised, unaware it was compromised and believing it would protect her computer from

17   viruses and malware in the manner, and quality of product and service, represented."  ¶ 9.  "Had

18   Plaintiff known about the compromised source code in the Norton Antivirus product she

19   purchased and that the Norton Antivirus product was not as represented by Symantec, she

20   would not have purchased the product."  Id.

21           In 2012, a hacking group publicly claimed to possess the 2006 stolen source code and

22   posted certain code on the internet, and Symantec disclosed for the first time that its systems had

23   been breached in 2006 and the source code stolen.  ¶¶ 27, 32, 40-41.

24       **B.      Procedural Background**

25           Plaintiff filed the initial complaint in this action in April 2013, and then filed a First

26   Amended Complaint ("FAC") in May. ECF Nos. 1 & 17.  Defendant filed a motion to dismiss,

27

28   _____
     [2] All paragraph citations in this section are to the SAC.

arguing, among other things, that Plaintiff lacked Article III standing.  ECF No. 22.  The Court granted the motion on the sole ground that Plaintiff lacked standing because she failed to allege in the FAC that the product she purchased, Norton Antivirus, was among the compromised Symantec products.  Order Granting Motion to Dismiss 7, ECF No. 32.  Concluding that it lacked subject matter jurisdiction, the Court did not address Defendant's other arguments for dismissal, but instructed her to "make whatever amendments she thinks necessary in light of the arguments raised by Symantec in its motion to dismiss." Id.

Defendant amended her complaint, this time clearly alleging that she purchased one of the allegedly compromised products.  SAC ¶¶ 1, 9.  In the SAC, Plaintiff brings a proposed class action against Symantec on behalf of herself and a proposed class of individuals who purchased, leased and/or licensed the Products.  ¶ 1.  Plaintiff asserts the following four claims against Symantec in the SAC: (1) Violations of the Consumer Legal Remedies Act, California Civil Code § 1750, *et seq.* ("CLRA"); (2) Unfair Competition, California Business and Professions Code §17200, *et seq.* ("UCL"); (3) Breach of Contract; and (4) Money Had and Received.  ¶¶ 54-82.

Defendant has filed a Motion to Dismiss the SAC, on the grounds that Plaintiff has not pled her claims with sufficient particularity to satisfy Rule 9(b) of the Federal Rules of Civil Procedure, and that each of Plaintiff's claims fail to state a claim upon which relief can be granted.

### C.    Jurisdiction

Plaintiff asserts, and Symantec does not deny, that Plaintiff is a citizen of Texas and that Symantec is a Delaware corporation with its principal place of business in California.  ¶¶ 9-10.  Therefore, the Court has subject-matter jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because there are 100 or more Class Members, at least one Class Member is a citizen of a state diverse from Symantec's citizenship, and the matter in controversy exceeds $5,000,000 exclusive of interest and costs.

### D.    Legal Standards

Fraud claims are subject to a heightened pleading standard.  "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  "Rule 9(b) demands that the circumstances constituting the alleged fraud be 'specific

enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong.'" Kearns v. Ford Motor Co., 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting Bly–Magee v. California, 236 F.3d 1014, 1019 (9th Cir.2001). "To meet this standard, [a] [p]laintiffs' complaint must 'identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false.'" Salameh v. Tarsadia Hotel, 726 F.3d 1124, 1133 (9th Cir. 2013) (quoting Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1055 (9th Cir. 2011)).

In pleading claims not subject to Rule 9(b), a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. Pro. 8(a)(2), subject to dismissal pursuant Rule 12(b)(6) for failure to state a claim. "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks cognizable legal theory or sufficient facts to support a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008). Dismissal is also proper where the complaint alleges facts that demonstrate that the complaint is barred as a matter of law. See Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1990); Jablon v. Dean Witter & Co., 614 F.2d 677, 682 (9th Cir. 1980). For purposes of a motion to dismiss, "all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." Cahill, 80 F.3d at 337-38.

## II.    ANALYSIS

### A.    Rule 9(b)

To begin with, the parties disagree about which causes of action in the SAC must be pled with particularity under Rule 9(b). They then dispute whether the SAC satisfies Rule 9(b)'s requirements.

#### 1.    Scope of Rule 9(b)

Defendant argues that Rule 9(b) applies to Plaintiff's CLRA and UCL causes of action. Motion 4:25-5:21. Plaintiff argues in opposition that Rule 9(b) does not apply to "all of" Plaintiff's claims, but does not specify which ones she believes it does apply to. Opp. 6:3-7:3. (Presumably, Plaintiff concedes that Rule 9(b) applies at least insofar as she brings a cause of

United States District Court
Northern District of California

4

1    action under the UCL's 'fraudulent practices' prong.)

2            Plaintiff labels Defendant's conduct as "fraudulent" throughout the SAC, which is

3    primarily devoted to accusing Defendant of knowingly falsely representing its products.  SAC ¶¶

4    49, 62, 65, 68, 70, 75, 79; see Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1105 (9th Cir.

5    2003) ("[f]raud can be averred by specifically alleging fraud or by alleging facts that necessarily

6    constitute fraud").  Plaintiff argues that the SAC also mentions that Defendant failed to disclose

7    the security breach to its customers.  Plaintiff's Opposition ("Opp.") 6:17-7:3, ECF No. 36.  But

8    federal courts look to the relevant state law causes of action to determine the scope of a 'fraud'

9    claim, and "[b]ecause the Supreme Court of California has held that nondisclosure is a claim for

10   misrepresentation in a cause of action for fraud, it (as any other fraud claim) must be pleaded with

11   particularity under Rule 9(b)."  Kearns v. Ford Motor Co., 567 F.3d 1120, 1127 (9th Cir. 2009).

12           Rule 9(b) applies to Plaintiff's CLRA and UCL claims.[3]

13                **2.      Application of Rule 9(b)**

14           In alleging that Defendant's conduct was fraudulent, Plaintiff has provided specific

15   statements on Symanetc's website and in its advertisements, representing, among other things, that

16   the Products' purposes are to "secure and manage . . . information against more risks" and

17   "eliminate risks to information, technology and processes . . . ."  ¶¶ 1-2, 9, 13-19, 43.  Plaintiff

18   alleges in the SAC that she was "exposed to Symantec's claims on its retail website" and that she

19   "purchased the Norton Antivirus software for the reasons advertised." ¶ 9.

20   _____

21   [3] When a plaintiff "allege[s] some fraudulent and some non-fraudulent conduct . . . only the
     allegations of fraud are subject to Rule 9(b)'s heightened pleading requirements."  Vess, 317 F.3d
22   at 1105.  In that scenario, "if particular averments of fraud are insufficiently pled under Rule 9(b),
     a district court should 'disregard' those averments, or 'strip' them from the claim," and "then
23   examine the allegations that remain to determine whether they state a claim."  Id.  As stated infra,
     Plaintiffs' misrepresentation and nondisclosure claims both involve fraudulent conduct, and since
24   Plaintiff has failed to satisfy Rule 9(b), those allegations must be "stripped" from the claim.  After
     stripping the SAC of all fraud and nondisclosure allegations, the SAC could be liberally construed
25   to allege that, for reasons independent of the content of its advertisements and nondisclosures,
     Defendant violated the UCL and the CLRA by selling a product it knew to be compromised.  See
26   ¶¶ 2, 20, 25, 43, 47, 51, 68.  Plaintiff has not demonstrated that the UCL and CLRA impose an
     affirmative duty to disclose quality-of-product information when a defendant's representations are
27   otherwise neither false nor misleading.  Therefore the Court finds that the SAC fails to state a
     claim under the UCL and the CLRA without the allegations of fraudulent conduct.
28

United States District Court
Northern District of California

1    Defendant argues that this is insufficient under Rule 9(b) to allege fraud for two reasons.

2 First, Defendant argues that Plaintiff fails to identify any specific advertisement she saw and relied

3 upon before making her purchase.  Motion 7:5-10:12.  Second, Defendant argues that the only

4 representations identified in the SAC are non-actionable "puffery."  Motion 10:13-11:4.

5            **a.    Failure to Cite the Specific Representation on Which She Relied**

6    Defendant relies primarily on <u>Kearns</u> for the proposition that a plaintiff bringing a UCL

7 and CLRA claim based on fraudulent advertising must plead with particularity the specific

8 advertisement or representation which she viewed, and on which she relied, in making her

9 purchase.  In <u>Kearns</u>, a car purchaser brought UCL and CLRA claims against Ford Motor

10 Company and its dealerships, alleging that Ford's marketing materials and representations falsely

11 led him to believe that Ford's certified pre-owned vehicles were subject to rigorous safety

12 inspections conducted by specially trained technicians.  567 F.3d at 1125.  The plaintiff alleged

13 "he was exposed to these representations through (1) Ford's televised national marketing

14 campaign; (2) sales materials found at the dealership where he bought his vehicle; and (3) sales

15 personnel working at the dealership where he bought his vehicle," and that he purchased a pre-

16 owned Ford in reliance on these representations.  <u>Id.</u> at 1125-26.  The Ninth Circuit held:

> Kearns fails to allege in any of his complaints the particular
> circumstances surrounding such representations. Nowhere in the
> TAC does Kearns specify what the television advertisements or
> other sales material specifically stated. Nor did Kearns specify when
> he was exposed to them or which ones he found material. Kearns
> also failed to specify which sales material he relied upon in making
> his decision to buy a CPO vehicle. Kearns does allege that he was
> specifically told "CPO vehicles were the best used vehicles available
> as they were individually hand-picked and rigorously inspected used
> vehicles with a Ford-backed extended warranty." Kearns does not,
> however, specify who made this statement or when this statement
> was made. Kearns failed to articulate the who, what, when, where,
> and how of the misconduct alleged.

25 <u>Id.</u> at 1126.  <u>Kearns</u> is a factually similar case, and Plaintiff makes no attempt to distinguish it.

26    Nonetheless, there are at least two reasons to think Plaintiff's claims are not insufficiently

27 pleaded, even in light of <u>Kearns</u>.  First, unlike Kearns, Plaintiff Haskins does "specify what the . . .

28 advertisements and other sales material specifically stated," and has appended the relevant

documents to the SAC.

Second, and more importantly, <u>Kearns</u>' rule about 9(b)'s requirements must be read in context with the underlying standard for pleading a cause of action under the UCL.  Shortly after <u>Kearns</u>, the California Supreme Court held that, at least in some situations, plaintiffs can state a UCL claim for a fraudulent advertising campaign *without* demonstrating that they actually viewed any specific advertisement.  <u>See</u> <u>In re Tobacco II Cases</u>, 46 Cal. 4th 298, 327 (2009) (a plaintiff does not "need to demonstrate individualized reliance on specific misrepresentations to satisfy the reliance requirement" of the UCL).  In so holding, the California Supreme Court approvingly cited California Court of Appeal decisions finding for plaintiffs who "testified that their decisions to begin smoking was influenced and reinforced by cigarette advertising, though neither could point to specific advertisements."  <u>Id.</u> (citing <u>Boeken v. Phillip Morris, Inc.</u>, 127 Cal.App.4th 1640, 1662-63 (2005) <u>and</u> <u>Whitely v. Philip Morros Inc.</u>, 117 Cal.App.4th 635, 679 (2004)).  The Supreme Court held that, accordingly, a plaintiff "is not required to necessarily plead and prove individualized reliance on specific misrepresentations or false statements where, as here, those misrepresentations and false statements were part of an extensive and long-term advertising campaign."  <u>Id.</u> at 328.

It is very difficult to reconcile <u>Kearns</u> with <u>Tobacco II</u>.  If Plaintiff can prevail at trial without demonstrating that she saw any specific advertisement, it would make little sense to interpret Rule 9(b) to require dismissal of her claim at the pleading stage for failing to include a specific allegation that she saw a specific advertisement.  The Court does not read the above-cited passage of <u>Kearns</u> as quietly establishing that Rule 9(b) requires a plaintiff to plead specific facts regarding the viewing of a specific advertisement even when a plaintiff need not prove that fact to prevail under the underlying substantive law.  If interpreted in this manner, Rule 9(b) would become more substantive than procedural, since it would "abridge" or "modify" a "substantive right" granted to plaintiffs under the UCL and CLRA.  <u>Vess</u>, 317 F.3d at 1102-03 (<u>quoting</u> 28 U.S.C. § 2072).

At oral argument, Symantec's counsel argued that <u>Tobacco II</u> only permits an absent class member to assert standing without proving she or he saw a specific advertisement, but does not

permit a named class representative to do so.  Tobacco II did, after significant discussion,

conclude that the UCL standing requirements imposed by Proposition 64 apply only to named

class plaintiffs and not to absent class members.  46 Cal.4th at 314-25.  But the Supreme Court's

later statement that a "plaintiff" need not "demonstrate individualized reliance on specific

misrepresentations" does not seem to apply only to plaintiffs who are absent class members.  Id. at

327.  The statement appears in a section of the opinion entitled "What Is Required to Establish

Standing Under the UCL as Amended by Proposition 64?," and since the Supreme Court had just

concluded that Proposition 64's standing requirements did not apply to absent class members, it

seems unlikely that that analysis applied to absent class members at all, much less exclusively.[4]

The only post-Tobacco II case Defendant cites from the Ninth Circuit is Sateriale v. R.J.

Reynolds Tobacco Co., 697 F.3d 777, 793 (9th Cir. 2012).  While Sateriale noted that the

plaintiffs in that case were required to prove individualized reliance "[b]ecause the plaintiffs' UCL

claim sounds in fraud," the court was applying the Proposition 64-imposed standing requirements

of the UCL and the CLRA, not any requirements imposed by Rule 9(b).  Id.  Sateriale did not

address the prospect, raised in Tobacco II, that a plaintiff could satisfy the 'reliance' requirement

without alleging that he or she saw any specific representation, by alleging reliance on a long-term

advertising campaign.

With all this said, however, the Tobacco II "exception" appears to be a narrow one, and

Plaintiff has not demonstrated that she falls within it.  The Supreme Court emphasized that the

tobacco cases it analyzed involved a "decades-long campaign of the tobacco industry to conceal

the health risks of its product while minimizing the growing consensus regarding the link between

cigarette smoking and lung cancer and, simultaneously, engaging in 'saturation advertising

targeting adolescents, the age group from which new smokers must come.'"  46 Cal. 4th at 327.

---

[4] There is only a single portion this section discussing the distinction between named and
representative class plaintiffs.  46 Cal. 4th at 328.  In that passage, the Supreme Court noted that
the trial court had indicated that even the named representative plaintiffs lacked standing under
Proposition 64, and so the Supreme Court remanded for further proceedings to determine whether
"these plaintiffs can establish standing."  Id.  The court went on to consider what effect it would
have on the case if the named plaintiffs lacked UCL and CLRA standing, but this was only
"*assuming* that, in light of Proposition 64, the named representatives are no longer adequate
representatives of the class because they lack standing."  Id. (emphasis added).

Not only has Plaintiff failed to allege a campaign of this type, she has hinged her allegations on an advertising campaign which took place between 2006 and 2012, despite the fact that she purchased the product in 2007 or early 2008.  To adequately allege a fraudulent misrepresentation claim under the UCL and the CLRA without pleading that she saw a specific misrepresentation , a plaintiff must allege show that hers is the type of claim encompassed by the <u>Tobacco II</u> case, and also that the long-term advertising campaign to which she was exposed affected her decision to purchase the product.  Plaintiff has not done so in the SAC.

### b.      Non-Actionable Puffery

Defendant also argues that, even if Plaintiff were not required to plead with particularity that she viewed a specific misrepresentation, "she has not identified any actionable statements upon which she relied" because "[m]any of the statements identified in the Complaint are non-actionable puffery that cannot form the basis of a misrepresentation claim."  Motion 10:13-16.  By stating that "many" of the statements identified are non-actionable, it appears that Defendant concedes that some of them might be.  Defendant also identifies no appellate court authority holding that similar statements are non-actionable.  Plaintiff, however, notes that even statements which might be puffery standing alone can, in context, "contribute[] . . . to the deceptive context of the packaging as a whole" and therefore be actionable.  <u>Williams v. Gerber Products Co.</u>, 552 F.3d 934, 939, n. 3 (9th Cir. 2008).

On the one hand, this argument does not seem very much like a Rule 9(b) argument, since Defendant is certainly on notice of what Plaintiff contends are the fraudulent statements.  In arguing that those statements are not, in fact, actionable, Defendant is making an argument on the merits rather than objecting to the sufficiency of the pleading.

However, on the other hand, under Rule 9(b) plaintiffs must plead "the who, what, when, where, and how of the misconduct charged," and "must set forth what is false or misleading about a statement, and why it is false."  <u>Vess</u>, 317 F.3d at 1106 (quoting <u>In re GlenFed, Inc. Sec. Litig.</u>, 42 F.3d 1541, 1548 (9th Cir.1994) (<u>superseded by statute on other grounds as stated in</u> <u>Marksman Partners, L.P. v. Chantal Pharmaceutical Corp.</u>, 927 F.Supp. 1297, 1309-10 (1996)) (other internal citations and quotation marks omitted).  "In other words, the plaintiff must set forth an explanation

as to why the statement or omission complained of was false or misleading." <u>GlenFed</u>, 52 F.3d at 1548.

For this reason as well, the SAC fails to satisfy the Rule 9(b) pleading standard. Plaintiff has appended to her complaint nearly the entirety of Symantec's 2006-12 advertisements for, and website descriptions of, the Products. For one of the Products (pcAnywhere), none of the representations she cites in the SAC appear to relate to the product's safety or security. ¶ 15. Plaintiff has not explained why each of these statements were false. Plaintiff maintains that her claim is for fraud by omission, but in that case she must identify which information Defendant communicated that was rendered misleading by the failure to disclose the 2006 source code theft.[5] Under Rule 9(b), the burden is on Plaintiffs rather than Defendant to at least make a *prima facie* explanation of how each of the complained-of statements constitute fraud. Plaintiff has not done so in the SAC.

### c.    Conclusion

If Plaintiff seeks to maintain this action under <u>Tobacco II</u> without alleging that she viewed any specific representation, she must adequately allege the scope and gravity of the advertising campaign at issue, as well as demonstrate that she was, in fact, exposed to that campaign at the time of purchase (and, in response to a motion to dismiss, be prepared to defend her claim as the sort of action that falls within <u>Tobacco II</u>'s scope as it has been subsequently applied by California courts). If she seeks to maintain this action on the grounds that she viewed a specific misrepresentation, she must allege with particularity which statements she viewed, and the 'who, what, when, where, why and how' of the alleged misrepresentation. And in either case, she must state with specificity which statements constitute false statements, and explain why they were false or were rendered misleading by Defendant's alleged failure to disclose.

The Court finds that Plaintiff's UCL and CLRA claims are insufficiently pled under Rule 9(b) and must be dismissed for that reason. However, for the benefit of the parties in the event

_____

[5] <u>See</u> Cal. Civ. Code § 1710(3), defining one species of deceit as "[t]he suppression of a fact, by one who . . . gives information of other facts which are likely to mislead for want of communication of that fact."

United States District Court
Northern District of California

1    that Plaintiff chooses to amend the complaint, the Court now addresses Defendant's argument that

2    Plaintiff has failed to state a claim under the UCL and the CLRA under normal Rule 8 and

3    12(b)(6) standards.

4        **B.    UCL**

5        Defendant argues that, even if Rule 9(b) did not apply to the UCL claims, the SAC fails to

6    state a claim for a UCL violation for two reasons: first, because Plaintiff lacks UCL standing, and

7    second, because she has failed to allege any 'unlawful' or 'unfair' practice.

8        **1.    UCL 'Standing'**

9        The UCL "requires a plaintiff to demonstrate 'some form of economic injury' as a result of

10   his transactions with the defendant."  Hinojos v. Kohl's Corp., 718 F.3d 1098, 1104 (9th Cir.

11   2013) (quoting Kwikset Corp. v. Superior Court, 51 Cal. 4th 310, 323 (2011)).  It is well

12   established that a plaintiff can show such economic injury when she paid more for a product that

13   she was willing to pay because the product was not as advertised.  Hinojos, 718 F.3d at 1105

14   (citing Kwikset, 51 Cal.4th at 328-30); see also Zhang v. Superior Court, 57 Cal. 4th 364, 380

15   (2013) ("[u]nder the UCL, it is necessary only to show that the plaintiff was likely to be deceived,

16   and suffered economic injury as a result of the deception").

17       However, Defendant argues that Plaintiff cannot satisfy this requirement because she does

18   not allege that she viewed any specific advertisement or representation.  Motion 12:1-13:10.

19   Defendant cites a number of federal district court opinions holding that plaintiffs cannot satisfy the

20   UCL's standing requirement on this ground, and a number of other opinions holding that a

21   plaintiff lacks Article III standing for the same reason.[6]

22       But Defendant does not discuss the possibility that Plaintiff could prove, under Tobacco II,

23   that she lost money or property as a result of relying on a long-term advertising campaign.  At

24   least under some circumstances a plaintiff can succeed on a UCL false representation claim

25

26   _____

27   [6] The former category is inclusive of the latter one.  See Kwikset, 51 Cal.4th at 324 ("the
     Proposition 64 requirement that injury be economic renders standing under section 17204

28   substantially narrower than federal standing under article III, section 2 of the United States
     Constitution, which may be predicated on a broader range of injuries").

United States District Court
Northern District of California

without pleading that she saw any specific advertisement.  And if she can plead such a claim, her "economic injury" is in purchasing a product she would not have purchased but for the misrepresentation.  Therefore, if Plaintiff can plead a viable claim on this theory, she does not lack standing under the UCL.

### 2.  Failure to Plead an Unlawful or Unfair Practice

Defendant argues that even under Rule 8 pleading standards, Plaintiff has failed to allege conduct that is 'unlawful' or 'unfair' under the UCL.  Motion 14:21-16:7.

### a.  'Unlawful' Practices

The UCL's 'unlawful practices' prong "'borrows violations of other laws and treats them as unlawful practices' that the unfair competition law makes independently actionable." Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co., 20 Cal. 4th 163, 180 (1999) (quoting State Farm Fire & Casualty Co. v. Superior Court, 45 Cal.App.4th 1093, 1103 (1996)).  The SAC states that Symantec's practices "violat[e] Civil Code §§1572, 1573, 1709, 1711, 1770, Business & Professions Code §§ 17200, et seq., 17500, et seq., and the common law."  SAC ¶ 69.  However, Plaintiff does not plead a cause of action in the SAC under any of these statutes (except for the UCL itself).  The only other statutory claim Plaintiff has pled is for violation of the CLRA, which the Court dismisses in this order and which was not listed in any event in paragraph 69 as a predicate violation for her UCL claim.  Therefore, she does not have a viable claim for an 'unlawful' practice under the UCL.[7]

### b.  'Unfair' Practices

"The standard for determining what business acts or practices are 'unfair' in consumer actions under the UCL is currently unsettled." Zhang, 57 Cal. 4th at 380, n. 9.  Under one

---

[7] In her opposition, Plaintiff argues that her claim "[b]ecause Plaintiff states claims under the CLRA and the common law, she states claims under the UCL's "unlawful" prong."  Opp. 16:8-9. But she does not list the CLRA as among the statutory violations forming the predicate of her unlawful practices claim.  Cal. Civ. Code § 17500 et seq., is the False Advertising Law, which Plaintiff has not pled.  Cal. Civ. Code § 1750 et seq. is the CLRA, which the SAC does not mention at paragraph 69 of the SAC as one of the statutory violations that predicate her UCL 'unlawful practices' claim.  As for claims under the "common law," this is not specific enough to put Defendant on notice of the claim against it.

United States District Court
Northern District of California

1    approach, "the public policy which is a predicate to a consumer unfair competition action under

2    the 'unfair' prong of the UCL must be tethered to specific constitutional, statutory, or regulatory

3    provisions." <u>Bardin v. Daimlerchrysler Corp.</u>, 136 Cal. App. 4th 1255, 1260-61, 39 Cal. Rptr. 3d

4    634, 636 (2006). Another set of approaches utilize various balancing tests that weigh the

5    substantiality of harm to consumers against the benefits of and justifications for the defendant's

6    conduct. <u>See</u>, <u>e.g.</u>, <u>Drum v. San Fernando Valley Bar Ass'n</u>, 182 Cal. App. 4th 247, 257 (2010);

7    <u>S. Bay Chevrolet v. Gen. Motors Acceptance Corp.</u>, 72 Cal. App. 4th 861, 888 (1999); <u>Camacho</u>

8    <u>v. Auto. Club of S. California</u>, 142 Cal. App. 4th 1394, 1403 (2006).

9        Defendant argues that since Plaintiff has not shown that she was actually harmed beyond

10   purchasing the allegedly compromised product, she cannot state a claim under the balancing-test

11   approach to 'unlawful' practices. However, it is a cognizable harm to pay more for a product than

12   one would have otherwise paid. On a motion to dismiss, it is at least plausible that that harm is

13   sufficient to satisfy the balancing test approach to 'unfair practices' claims.

14       Defendant also argues that Plaintiff's 'unfair practices' claim is entirely duplicative of her

15   claim under the 'fraudulent practices' prong, and that it fails for the same reason that Plaintiff fails

16   to plead a fraud claim. The Court does not agree that Plaintiff's claims under the prongs are

17   coterminous; she also appears to argue that it was unfair practice for Defendant to sell a product it

18   knew to be compromised, regardless of the content of its advertisements. Therefore, the 'unfair'

19   practices claim is sufficiently pled.

20       **C.    CLRA**

21       Defendant argues the Plaintiff's first cause of action under the CLRA should be dismissed

22   for failure to state a claim, for two reasons: first, because she lacks statutory standing under the

23   CLRA, and second, because the software she purchased is not a "good" or "service" as defined in

24   the CLRA.

25              **1.    CLRA Standing**

26       Defendant argues that a plaintiff must allege "'tangible increased cost or burden to the

27   consumer'" to have standing to bring a CLRA action. Motion 12:9-11 (quoting <u>Meyer v. Sprint</u>

28   <u>Spectrum L.P.</u>, 45 Cal. 4th 634, 641 (2009). **"In** <u>Meyer</u>,[] the California Supreme Court made

United States District Court
Northern District of California

1   clear that the CLRA's 'any damage' requirement is a capacious one that includes any pecuniary

2   damage as well as opportunity costs and transaction costs that result when a consumer is misled by

3   deceptive marketing practices.  Hinojos v. Kohl's Corp., 718 F.3d 1098, 1108 (9th Cir. 2013)

4   (internal citation and full case name omitted).  "Because the 'any damage' standard includes even

5   minor pecuniary damage," the Ninth Circuit recently held that "any plaintiff who has standing

6   under the UCL's and FAL's 'lost money or property' requirement will, *a fortiori*, have suffered

7   'any damage' for purposes of establishing CLRA standing."  Id.

8       It therefore also follows, *a fortiori*, that Plaintiff has for the same reason she has UCL

9   standing. See III-B-1, *supra*.

10              **2.    "Good"**

11      Defendant also moves to dismiss on the grounds that the software Plaintiff purchased is

12  neither a "good" or a "service" as defined in the CLRA, and therefore falls outside statute's reach.

13  Motion 13:11-14:20.

14      The CLRA defines "goods," in relevant part, as "tangible chattels bought or leased for use

15  primarily for personal, family, or household purposes."  Cal. Civ. Code § 1761(a).  "Services" are

16  defined as "work, labor, and services for other than a commercial business use, including services

17  furnished in connection with the sale or repair of goods."  Id. § 1761(b).

18      In its Motion, Defendant appeared to argue that, because Plaintiff downloaded the software

19  from the internet from Symantec's website instead of purchasing it in a store, she did not purchase

20  a "tangible" chattel.  Motion 13:18-21.  On reply, Defendant appears to argue that *all* software is

21  outside the reach of the CLRA, even if initially purchased in tangible form.  Reply 3:3-6.

22      The "tangible chattels" language in the CLRA's definitions dates from 1970.  Stats.1970,

23  Ch. 1550, § 1.  It seems unlikely that the Legislature knowingly exempted computer software from

24  the CLRA's scope two years before the invention of Pong.[8]  More probably, the purpose of the

25

26  ---
    [8] S. Kent, "And Then There Was Pong," in Ultimate History of Video Games 43-45 (2001) ("In

27  1972, Nolan Bushnell, a rather clever electronics engineer from Northern California, adapted
    Ralph Baer's Magnavox toy for playing ping-pong on the television screen into a coin machine.

28  As the world knows, he called it *Pong*.").

language was to exempt commodities such as credit or insurance from the CLRA's scope, since those commodities are inherently intangible promises which have no direct and concrete impact on the physical universe.  See, e.g., Fairbanks v. Superior Court, 46 Cal. 4th 56, 61 (2009) ("An insurer's contractual obligation to pay money under a life insurance policy is not work or labor, nor is it related to the sale or repair of any tangible chattel"); Berry v. American Exp. Publishing, Inc., 147 Cal. App. 4th 224, 229 (2007)(distinguishing the extension of credit from the purchase of goods and services).

The Court's strong suspicions about the Legislature's intentions would not justify a construction that "expanded . . . [the statute] beyond its express terms."  Berry, 147 Cal.App.4th at 232.  But "tangible" means "[h]aving or possessing physical form; corporeal."  Black's Law Dictionary (9th ed. 2009).  Defendant's software is often purchased in physical form.  Moreover, no matter how the software is delivered, it works a physical change on a physical hard drive.  It possesses corporeal form in a way that credit or insurance inherently cannot.  A consumer can purchase Norton Antivirus in a store, pick it up in her hands, and carry it home.  It is in that way the same as most commodities considered to be "goods" under the CLRA, and distinct from the sorts of commodities that are considered not to be.

At oral argument, Defendant argued that the fact that the software is delivered through a tangible medium is irrelevant, since the disc itself is nothing but a physical mechanism for delivering a nonphysical right to use intangible software.  But by slicing things that thinly, many of even the most tangible of commodities could be characterized as delivery mechanisms for the transmission of intangible things.  No one would seriously dispute that a book is a "tangible chattel," despite the fact that the physical object itself is merely a delivery mechanism for the transmission of information.  Insurance contracts and credit cards, in contrast, are not delivery mechanisms; they are merely physical representations of the parties' intangible agreement.  Consumers do not purchase software discs or books to memorialize or prove the existence of an agreement; they purchase the objects to possess and use them.  As a physical object purchased for

a consumer's use, a software disc is a tangible chattel.[9]

The Court agrees with its colleague court that "the issue presents a very close call." Ferrington v. McAfee, Inc., No. 10-cv-01455-LHK, 2010 WL 3910169, at *18-19 (N.D. Cal. Oct. 5, 2010). However, in evaluating the strong arguments on both sides, this Court must give appropriate deference to the CLRA's direction to courts that the statute must "be liberally construed and applied to promote its underlying purposes." Cal. Civ. Code § 1760. At least where the same software can be purchased both in a store and online, construing the statute to exempt only the version purchased online would not be a liberal construction consistent with the CLRA's purposes.[10]

### D.      Breach of Contract

"A cause of action for breach of contract requires pleading of a contract, plaintiff's performance or excuse for failure to perform, defendant's breach and damage to plaintiff resulting therefrom." McKell v. Washington Mut., Inc., 142 Cal. App. 4th 1457, 1489 (2006). "A written contract may be pleaded either by its terms—set out verbatim in the complaint or a copy of the contract attached to the complaint and incorporated therein by reference—or by its legal effect." Id. "In order to plead a contract by its legal effect, plaintiff must 'allege the substance of its relevant terms.'" Id. (quoting 4 Witkin, Cal. Proc. (4th ed. 1997) Pleading, § 476, p. 570). "This is more difficult, for it requires a careful analysis of the instrument, comprehensiveness in statement, and avoidance of legal conclusions, and it involves the danger of variance where the instrument proved differs from that alleged." 4 Witkin, Cal. Proc. (5th ed. 2008) Pleading, § 519, p. 651.

Plaintiff has not attached what she alleges to be her contract with Defendant, nor set out its terms verbatim in the complaint. Defendant, on the other hand, has submitted the license

---

[9] The Court also concludes that there are good reasons to consider antivirus software to be a "service" under the CLRA, since it continually updates and runs regular virus checking. On such a reading, however, a plaintiff would only be able to bring a CLRA claim for violations relating to the process of updating and servicing the computer.

[10] The Court does not reach today the question of whether software only available for purchase on-line is a "good" as that term is used in the CLRA.

United States District Court
Northern District of California

agreement that it claims (and Plaintiff does not dispute) that all consumers purchasing Norton

Antivirus in 2007 and 2008 agreed to.  RJN, Section IV; Newby Decl. ¶¶ 4-5, Exhs. C-D.  Plaintiff

does not point to any terms of that License Agreement that it claims Defendant breached.

Plaintiff's opposition attempts to cobble together the terms of an implied contract by incorporating

the terms of Symantec's 2006-2012 advertising campaign, language on Symantec's website

regarding its corporation's goals, and even the name of the product itself.  Putting aside the

questions of whether advertising can constitute a contractual term (it is typically considered an

invitation to deal), and whether the other representations on Symantec's current website formed

part of the mutually understood agreement of the parties, the SAC itself fails to paint a clear

picture of the alleged contract's terms.

   The SAC does not clearly allege the substance of the relevant terms of Plaintiff's alleged

contract with Symantec, such that Defendant is reasonably on notice of the claims against it.

Therefore, the SAC fails to state a claim for breach of contract.

   **E.**  **Money Had and Received**

   A cause of action for money had and received "is available in a great variety of situations

and 'lies wherever one person has received money which belongs to another, and which in equity

and good conscience should be paid over to the latter.'" Gutierrez v. Girardi, 194 Cal. App. 4th

925, 937 (2011), reh'g denied (May 16, 2011) (quoting Weiss v. Marcus, 51 Cal.App.3d 590, 599

(1975) (other internal citation omitted).  While often brought to recover money a defendant

maintained "for the plaintiff's benefit," it does not appear that this element is always required

under California law.  See, e.g., Supervalu, Inc. v. Wexford Underwriting Managers, Inc., 175 Cal.

App. 4th 64, 78 (2009).

   However, "money had and received is based on the existence of a quasi-contract," and "'an

action in quasi-contract . . . does not lie when an enforceable, binding agreement exists defining

the rights of the parties.'" Mar Partners 1, LLC v. Am. Home Mortgage Servicing, Inc., No. 10-

cv-02906-WHA, 2011 WL 11501, at *4 (N.D. Cal. Jan. 4, 2011) (quoting Paracor Fin., Inc. v.

Gen. Elec. Capital Corp., 96 F.3d 1151, 1167 (9th Cir. 1996) (other internal citations omitted)).

   Here, Plaintiff claims that there *is* a binding contract defining the rights of the parties

United States District Court
Northern District of California

17

relative to her purchase of Norton Antivirus, but she also brings a quasi-contractual claim arguing that Defendant has been unjustly enriched for the precise reasons that Defendant breached their contract. This distinguishes this case from <u>Supervalu</u>, in which money had and received remained viable as a quasi-contractual remedy for harms which occurred distinct from the parties' legal agreement. 175 Cal.App.4th at 78. Therefore, given Plaintiff's allegation about the existence of a contract, and her arguments that money is owed to her for the same reason in quasi-contract as it is owed to pursuant to her contract, she cannot state a viable claim for money had or received unless she clarifies that she is pleading the claims in the alternative and concedes that she cannot recover on both theories.

### F.     Leave to Amend

Defendant suggests that dismissal should be with prejudice. Rule 15's policy of freely giving leave to amend "is to be applied with extreme liberality." <u>Eminence Capital, LLC v. Aspeon, Inc.</u>, 316 F.3d 1048, 1051 (9th Cir. 2003) (internal citations omitted). While this is Plaintiff's second amended complaint, the Court has not previously addressed the merits of Plaintiff's claims and therefore cannot conclude that it would be futile to permit further amendment.

The Court grants Plaintiff leave to file a third amended complaint in this action. Plaintiff only has leave to file a third amended complaint that asserts one or more of the four causes of action pled in the SAC. The Court further orders that:

1.     If Plaintiff re-asserts her UCL and CLRA claims, she must: (a) specifically identify an advertisement or representation which she viewed and on which she relied, and/or (b) clarify that she seeks to maintain her action on the grounds that she was exposed to a long-term advertising campaign.

2.     If Plaintiff re-asserts her UCL and CLRA claims on the theory identified at 1(b), *supra*, she must specifically identify which representations formed part of that long-term advertising campaign at the time that she purchased the product, explain how she was exposed to that campaign at the time that she purchased the product, and allege sufficient facts regarding the scope and gravity of that campaign from

which the Court can determine whether it falls within the scope of <u>Tobacco II.</u>

3.    If Plaintiff re-asserts her UCL or CLRA claims, she must specifically identify all allegedly false statements that form the basis of her claim, and explain why the statements are false or were rendered misleading by the alleged nondisclosure.

4.    If Plaintiff re-asserts her UCL 'unlawful practices' claim, she must identify with specificity which statutory causes of action, pled in the complaint, form the predicate violation for that claim.

5.    If Plaintiff re-asserts her claim for breach of contract, she must either: (a) append a copy of what she claims is the parties' written agreement, or (b) state specifically the substance of the relevant terms of the parties' legal agreement, explain the source of those claimed terms, and explain how those terms either became part of the parties' agreement at the time she purchased the product or became part of the parties' agreement due to some later modification of the parties' legal agreement.

6.    If Plaintiff re-asserts her claim for money had and received in addition to pleading a breach of contract claim, she must either clarify that she is pleading these claims in the alternative, or explain specifically why her money had and received claim extends to rights and obligations not encompassed in the parties' legal agreement.

With any third amended complaint, Plaintiff must include, in a separate document, a brief description of how the third amended complaint complies with these instructions.

## IV.    CONCLUSION

The SAC is DISMISSED WITHOUT PREJUDICE.  Any third amended complaint in this action must be filed no later than twenty-one days from the date of this order.  Failure to file a

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

third amended complaint by this deadline, or failure to overcome the deficiencies identified in this

order, is likely to result in dismissal with prejudice.

    **IT IS SO ORDERED**.

Dated:  December 1, 2013



                                        JON S. TIGAR
                                   United States District Judge