UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHLEEN HASKINS,<br><br>     Plaintiff,<br><br>     v.<br><br>SYMANTEC CORPORATION,<br><br>     Defendant. | Case No. 13-cv-01834-JST<br><br>**ORDER GRANTING MOTION TO DISMISS THE THIRD AMENDED COMPLAINT**<br><br>Re: ECF No. 51 |

## I.   INTRODUCTION

The Court previously dismissed the Second Amended Complaint in this action without prejudice, after concluding that Plaintiff Kathleen Haskins ("Plaintiff") had failed to state a claim and had failed to satisfy the pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure. Order Granting Motion to Dismiss the Second Amended Complaint ("Previous Order"), ECF No. 45, 2013 WL 6234610, 2013 U.S. Dist. LEXIS 169865. Plaintiff has now filed a Third Amended Complaint ("TAC"), ECF No. 47, which Defendant Symantec Corporation ("Symantec") again moves to dismiss. ECF No. 51. The Court incorporates by reference its statement of the Factual Background, Procedural History, Legal Standard and Jurisdiction from its Previous Order. Previous Order 1:15-4:18, 2013 WL 6234610, at *1-3, 2013 U.S. Dist. LEXIS 169865, 1-7.

## II.   ANALYSIS

### A.   Failure to Identify a Specific Representation

The Court previously dismissed Plaintiff's UCL and CLRA claims without prejudice since she failed to identify any specific representation she actually viewed. The Court gave Plaintiff leave to re-assert her UCL and CLRA claims, but ordered that, if she did, she must "(a) specifically identify an advertisement or representation which she viewed and on which she relied,

and/or (b) clarify that she seeks to maintain her action on the grounds that she was exposed to a long-term advertising campaign."

At oral argument on the motion to dismiss the SAC, Plaintiff's counsel suggested that the failure to cite a specific representation was merely an oversight, and promised that Plaintiff could "readily" amend the complaint to specify the representation she actually viewed. But the TAC again lacks any allegation that Plaintiff actually viewed any representation. Instead, Plaintiff alleges conclusorily that she "relied" on a very long list of representations, and that she was "exposed to" those representations. As the Court explained in the Previous Order, under Rule 9(b), this is insufficient to plead a UCL and CLRA claim grounded in fraud. Previous Order 5:13-9:7, 2013 WL 6234610, at *4-8, 2013 U.S. Dist. LEXIS 169865, 9-18. Moreover, even if the Court were to revisit its conclusion that Plaintiff's UCL and CLRA claims sound in fraud, it would find that a claim like the one alleged in the TAC fails to state a claim, since Plaintiff has failed to allege actual reliance and causation, and therefore she cannot meet the Proposition 64-imposed standing requirements in the UCL and CLRA. See In re Tobacco II Cases, 46 Cal. 4th 298, 328 (2009) ("a plaintiff must allege that the defendant's misrepresentations were an immediate cause of the injury-causing conduct").[1]

It is plain from the numerous iterations of the complaint in this action that Plaintiff cannot allege that she saw any specific representation. Therefore, the only avenue for Plaintiff to bring a UCL or CLRA claim is under Tobacco II's narrow, but unclearly defined, exception to the individual reliance requirement for plaintiffs who allege exposure to a "long-term advertising campaign." 46 Cal.4th at 326-29.

**B.     Tobacco II "Long-Term Advertising Campaign"**

The Court gave Plaintiff leave to bring her claim under this theory only if she could "specifically identify which representations formed part of that long-term advertising campaign at

---

[1] The Court previously declined to find that Plaintiff lacked UCL standing since it was still possible Plaintiff might eventually demonstrate that she could satisfy the UCL's requirements under the Tobacco II exception. Since, as set forth more fully in Part II-B, Plaintiff does not qualify under that standard, the Court now finds that the Proposition 64 standing requirement also bars Plaintiff's claim, even under the Rule 8 pleading standard.

2

the time that she purchased the product, explain how she was exposed to that campaign at the time that she purchased the product, and allege sufficient facts regarding the scope and gravity of that campaign from which the court can determine whether it falls within the scope of Tobacco II."

Plaintiff has added to the TAC allegations regarding the scope of the advertising campaign at issue in this case. The Court finds that it does not fall within the ambit of the Tobacco II exception.

Courts applying, and declining to apply, the Tobacco II exception have emphasized several factors in determining whether the exception applies. This Court has previously identified six: "(1) [A] plaintiff must allege that she actually saw or heard the defendant's advertising campaign," (2) "the advertising campaign at issue should be sufficiently lengthy in duration, and widespread in dissemination, that it would be unrealistic to require the plaintiff to plead each misrepresentation she saw and relied upon," (3) "a plaintiff seeking to take advantage of the exception should describe in the complaint, and preferably attach to it, a 'representative sample' of the advertisements at issue," (4) "the degree to which the alleged misrepresentations contained within the advertising campaign are similar to each other, or even identical, is also an important factor," (5) "a complaint subject to Rule 9(b)'s requirements should plead with particularity, and separately, when and how each named plaintiff was exposed to the advertising campaign," and (6) "the court must be able to determine when a plaintiff made her purchase or otherwise relied in relation to a defendant's advertising campaign, so as to determine which portion of that campaign is relevant." Opperman v. Path, Inc., No. 13-CV-00453-JST, 2014 WL 1973378, at *16-18, 2014 U.S. Dist. LEXIS 67225, 58-67 (N.D. Cal. May 14, 2014).

Some of the most basic factors, such as the first and the third, weigh in Plaintiff's favor. But the other factors weigh strongly against applying the Tobacco II exception. Plaintiff alleges that Defendant's advertising became misleading about the time of the alleged 2006 source code theft, and she purchased the product in 2007 or 2008. This falls well short of the "decades-long" campaign in Tobacco II, the length of which made it "unreasonable" to demand that the plaintiff identify a specific representation she actually viewed. Cf. In re Actimmune Mktg. Litig., No. 08-cv-02376-MHP, 2009 WL 3740648, at *13 (N.D. Cal. Nov. 6, 2009) aff'd, 464 F. App'x 651 (9th

Cir. 2011) (seven-year campaign not long enough for Tobacco II exception).

Plaintiff cites numerous alleged misrepresentations in the TAC, some of which were in press releases or industry documents that an average consumer would be unlikely to read. See, e.g., TAC ¶¶ 10, 14-15. The only representations it is reasonable to assume Plaintiff was exposed to appeared in popular media such as magazines and websites. Unlike the Tobacco II plaintiffs, Plaintiff fails to identify what about these representations was rendered misleading by the 2006 source code theft. The Tobacco II defendants made demonstrably false statements about the health and safety of cigarettes in their advertising.

For the foregoing reasons, the Court will again dismiss the UCL and CLRA claims.

### C.  The "How" and "Why" of the Alleged Fraud

Under Rule 9(b), plaintiffs must plead "the who, what, when, where, and how of the misconduct charged," and "must set forth what is false or misleading about a statement, and why it is false." Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting In re GlenFed, Inc. Sec. Litig., 42 F.3d 1541, 1548 (9th Cir. 1994), superseded by statute on other grounds). Under Rule 9(b), a plaintiff must, in the complaint, specify "why the statement or omission complained of was false or misleading." GlenFed, 52 F.3d at 1548.

In the TAC, Plaintiff emphasizes representations such as "[s]tay protected," "detects and removes spyware," and "blocks spyware and worms automatically." TAC ¶ 33. Plaintiff has not pled facts from which it is plausible to infer that these statements are actionably false statements of fact, and she therefore has not satisfied the Rule 9(b) pleading requirements. The UCL and CLRA claims must be dismissed for this additional reason as well.

### D.  Breach of Contract

Plaintiff does not dispute that the parties' agreement is governed at least in part by the written terms of the Software License Agreement.[2]  "Plaintiff . . . specifically does not allege

---

[2] The Court again GRANTS Defendant's unopposed request for judicial notice of screenshots from the Symantec's website, and what Defendant submits is the 2008 Software Service License Agreement for Norton Antivirus, for the same reasons discussed in the Previous Order 1:23-28, n. 1. ECF No. 51-6. The Court also takes judicial notice of the Second Amended Complaint filed in Delacruz v. Cytosport, Inc. Id.

4

Symantec breached the Licensing Agreement." Plaintiff's Opposition to Motion to Dismiss the Third Amended Complaint 22:5-6, ECF No. 52. Instead, Plaintiff alleges that Defendant has breached an implied contract.

The Court previously dismissed this claim for failing to not clearly allege the substance, origin, and the relevant terms of the alleged implied contract. The Court gave Plaintiff leave to re-assert this claim, but ordered her to "state specifically the substance of the relevant terms of the parties' legal agreement, explain the source of those claimed terms, and explain how those terms either became part of the parties' agreement at the time she purchased the product or became part of the parties' agreement due to some later modification of the parties' legal agreement." Previous Order 19:9-13, 2013 WL 6234610, at *12, 2013 U.S. Dist. LEXIS 169865, 37.

Plaintiff cites authority that "[a]n implied contract 'consists of obligations arising from a mutual agreement and intent to promise where the agreement and promise have not been expressed in words.'" California Emergency Physicians Med. Grp. v. PacifiCare of California, 111 Cal. App. 4th 1127, 1134 (2003) (quoting Silva v. Providence Hospital of Oakland, 14 Cal.2d 762, 773 (1939)). As the next sentence in this case states, "[i]n order to plead a cause of action for implied contract, 'the facts from which the promise is implied must be alleged.'" California Emergency Physicians, 111 Cal. App. 4th at 1134 (quoting Youngman v. Nevada Irrigation Dist. 70 Cal. 2d 240, 247 (1969)).

The TAC alleges no such facts. Plaintiff alleges only that the parties' implied contract arose in some nonspecific manner from "the Parties' acts and conduct." TAC ¶ 120. The TAC sketches out what Plaintiff contends are the breached terms of this alleged implied contract, but Plaintiff did not follow the Court's order to "explain the source of those claimed terms, and explain how those terms" became part of the parties' legal agreement. Plaintiff has failed to put Defendant reasonably on notice of how Plaintiff will contend the parties became bound by this contract. This is particularly damaging to Defendant's ability to defend itself given that the alleged contract is implied. The Court will again dismiss the breach of contract claim.

E.  **Money Had and Received**

The Court previously ordered that, if "Plaintiff re-asserts her claim for money had and

received in addition to pleading a breach of contract claim, she must either clarify that she is pleading these claims in the alternative, or explain specifically why her money had and received claim extends to rights and obligations not encompassed in the parties' legal agreement." Plaintiff has amended the complaint to state that she brings a money had and received claim in the alternative to her claim for breach of contract. TAC ¶ 126.

But as judicially noticeable documents demonstrate, and Plaintiff does not dispute, the parties *do* have a binding legal agreement with regard to the software Plaintiff purchased. Generally, "[a]n action in quasi-contract ... does not lie when an enforceable, binding agreement exists defining the rights of the parties." Mar Partners 1, LLC v. Am. Home Mortgage Servicing, Inc., No. 10-cv-02906 WHA, 2011 WL 11501, at *4 (N.D. Cal. Jan. 4, 2011) (quoting Paracor Fin., Inc. v. Gen. Elec. Capital Corp., 96 F.3d 1151, 1167 (9th Cir. 1996)). There are exceptions to this rule, but they apply when a plaintiff, for reasons *independent* of the contract with Defendant, has a remedy in quasi-contract. See, e.g., Supervalu, Inc. v. Wexford Underwriting Managers, Inc., 175 Cal. App. 4th 64, 78-79 (2009) (citing Minor v. Baldridge, 123 Cal. 187, 191 (1898)).

The TAC does not contain facts from which it is plausible to infer that any such remedy is available. Typically, to recover on a claim for money had a received, a plaintiff must prove that the defendant received "money that was intended to be used *for the benefit of"* the plaintiff. Judicial Council Of California Civil Jury Instruction 370 (emphasis added). As the Court noted in its Previous Order, California courts have not always held that this is specifically required. Previous Order 17:19-22, 2013 WL 6234610, at *10, 2013 U.S. Dist. LEXIS 169865, 34. But when they have not, it is because there has been some injustice in the performance of the contract which has resulted in a defendant being overcompensated at the plaintiff's expense. See Supervalu, 175 Cal. App. 4th at 78-79. An assumpsit remedy typically arises to remedy outstanding indebtedness, to return to a plaintiff the value of services rendered, or to return money a plaintiff provided pursuant to a void contract, from a mistake, or while duress. See Util. Audit Co. v. City of Los Angeles, 112 Cal. App. 4th 950, 958 (2003); Schultz v. Harney, 27 Cal. App. 4th 1611, 1623 (1994); J.C. Peacock, Inc. v. Hasko, 196 Cal. App. 2d 353, 361 (1961). The TAC

6

1 includes no facts suggesting such a remedy would be appropriate here.

2 "When a common count is used as an alternative way of seeking the same recovery
3 demanded in a specific cause of action, and is based on the same facts, the common count is
4 demurrable if the cause of action is demurrable." McBride v. Boughton, 123 Cal. App. 4th 379,
5 394 (2004). A money had and received claim is a common count, and it cannot be pled by simply
6 alleging that the defendant owes the plaintiff money. This quasi-contractual remedy is not
7 intended to allow a purchaser of a good to salvage a product defect claim that she cannot
8 otherwise plead. The Court will again dismiss this claim.

### F. Leave to Further Amend

This is Plaintiff's fourth complaint, and this is the third time the Court will dismiss it. See Order Granting Motion to Dismiss, ECF No. 32, 2013 WL 4516179, 2013 U.S. Dist. LEXIS 120376 (dismissing the first amended complaint for failing to allege facts giving Plaintiff standing). "A district court's discretion to deny leave to amend is 'particularly broad' where the plaintiff has previously amended." Salameh v. Tarsadia Hotel, 726 F.3d 1124, 1133 (9th Cir. 2013) (quoting Sisseton-Wahpeton Sioux Tribe v. United States, 90 F.3d 351, 355 (9th Cir. 1996)).

Plaintiff responded to each dismissal by advancing essentially the same legal arguments and alleged no new facts necessary to state a claim. "A district court does not 'abuse its discretion in denying a motion to amend a complaint . . . when the movant presented no new facts but only 'new theories' and 'provided no satisfactory explanation for his failure to fully develop his contentions originally.'" Allen v. City of Beverly Hills, 911 F.2d 367, 374 (9th Cir. 1990) (quoting Vincent v. Trend Western Technical Corp., 828 F.2d 563, 570–71 (9th Cir. 1987)). Plaintiff has given the Court no reason to believe additional facts not heretofore alleged might be forthcoming in any fifth complaint. The fact that Plaintiff "failed to correct these deficiencies in its . . . [amended complaint] is 'a strong indication that the plaintiff[] ha[s] no additional facts to plead.'" Zucco Partners, LLC v. Digimarc Corp., 552 F.3d 981, 1007 (9th Cir. 2009) (citing In re Vantive Corp. Sec. Litig., 283 F.3d 1079, 1098 (9th Cir. 2002)).

Therefore, dismissal will be with prejudice.

### III. CONCLUSION

The Court GRANTS Defendant's Motion to Dismiss. The Court will not grant leave to file a fifth complaint. The complaint is DISMISSED WITH PREJUDICE. Defendant shall submit a proposed form of judgment consistent with this order within fourteen days of this order.

**IT IS SO ORDERED.**

Dated: June 2, 2014

_____
JON S. TIGAR
United States District Judge